**Michael Glenn VETETO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–018–CR.**

Court of Appeals of Texas,
Waco.

Jan. 12, 2000.

John M. Hurley, Atty. at Law, Waco, for appellant.

B.J. Shepherd, Dist. Atty., Meridian, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

"It were better for him that a millstone were hanged about his neck, and he cast into the sea, than that he should offend one of these little ones." *Luke* 17:2 (King James). This 2,000 year old reference is the earliest found to society's continuing effort to purge our society of those who prey on our children. *See* Katie Isaac, Note, *Kansas v. Hendricks: A Perilous Step Forward in the Fight Against Child Molestation*, 35 HOUS. L. REV. 1295 (1998).

What makes us a civilized society rather than a pack of animals is that our society operates under a system of well defined rules. These rules severely punish adults who molest children. Our society also has procedures and rules, established and based upon past abuses, which carefully govern the way that we as a society decide if an adult is guilty of molesting a child. Usually, this procedure is a jury trial, and the rules are our constitutions, statutes, rules of evidence and procedure, and the numerous cases interpreting each of these.

If during the course of a trial, either party fails to follow the rules, the trial court has various ways to correct the violations when called upon to do so by the other side. If it is alleged that the trial court failed to make the needed correction, it then becomes incumbent upon this Court to determine if a rule was violated by the parties and not corrected by the trial court.

Because the prosecutor in this case violated well-established rules, and because the trial court failed to correct the results of the prosecutor's violation, we are required to reverse the judgment of the trial court and send this case back for a fourth trial. For the fourth time, a jury must consider, in the manner established by the rules of our society, if the adult charged is guilty of aggravated sexual assault of a child. We must do this because we are bound by the rules applicable to this Court, and it is these same rules which protect all members in our society. If we fail to perform our proper role, our entire society suffers.

## SUMMARY

Michael Glenn Veteto was charged with three counts of aggravated sexual assault of A.L., a child. These charges were alleged to have occurred on or about September 25, 1994, October 15, 1994, and December 10, 1994. There had been two trials which ended in hung juries. In a third trial in 1997, this time with the assistance of a special prosecutor, Veteto was convicted of all three counts. He was sentenced to 15 years in the penitentiary and assessed a $5,000 fine on each count.

On appeal, Veteto primarily complains about the conduct of the special prosecutor. Veteto also contends the trial court commented on the weight of the evidence in its charge to the jury, Veteto's trial counsel was ineffective for not objecting to the charge, and the trial court improperly increased his punishment by cumulating the fines assessed in its judgment. Because the trial court overruled Veteto's motion for mistrial due to the State's improper comment on Veteto's post-arrest silence and required Veteto to answer an improper question, we will reverse the judgment and remand this cause for a new trial.

## BACKGROUND

A.L., an eleven year old female at the time of trial, testified that she was eight

years old when Veteto sexually assaulted her on at least three occasions: in his mother's vehicle, in A.L.'s home, and in Veteto's automotive shop. There were no witnesses to these incidents. A.L. knew Veteto because her parents, prior to their divorce, had been friends with him. After the divorce, Veteto and A.L.'s mother saw each other almost daily and dated occasionally on weekends. A.L. readily blamed Veteto for her parents' divorce. In February of 1995, prior to trial, A.L.'s mother died in a vehicle accident. In July of the same year, A.L. informed her sister of the sexual abuse incidents. She was taken to a doctor who performed an external exam only. The doctor found no signs of sexual abuse.

Veteto testified that he had owned an automotive garage since 1983 and became acquainted with A.L.'s parents in about 1989. The three were friends and occasionally had dinner together. Veteto denied causing the divorce of A.L.'s parents and denied dating A.L.'s mother. After the divorce, Veteto helped repair the farmhouse in which A.L. and her family lived. Veteto recalled that A.L. would beg to be with him. They would joke and "cut up" together. Veteto was unaware of any complaint regarding his relationship with A.L. or of any improper actions by him.

Veteto denied sexually assaulting A.L. at any time. He introduced evidence in the form of receipts, a calendar, and a newspaper to demonstrate to the jury that if the assaults had occurred, they did not occur on the dates alleged in the indictment. Veteto also produced witnesses who testified about A.L.'s active imagination.

## POST–ARREST SILENCE

█ Because his fourth issue is complex and dispositive of this case, we will address it first. In that issue, Veteto contends that the trial court erred in denying his motions for mistrial when the State, represented by a special prosecutor, attempted to elicit testimony, three different times, concerning his post-arrest silence. Prior to taking the stand himself, Veteto called Rex Childress, the chief of police of Clifton, to testify. During cross examination by the State, Veteto claims the following line of questions improperly referred to his post-arrest silence:

Special Prosecutor: When you went out there to pick this man up did you say to him, Mr. Veteto, you're accused [of] three different charges of aggravated sexual assault? Did you make him aware of what he was being arrested for?

Childress: I made him aware [of] what he was being arrested for.

Special Prosecutor: Did he deny any of these three aggravated sexual assault charges—

Veteto's Counsel: Your Honor, I am going to object to that, because the failure to deny the offense is absolutely inadmissible, Your Honor, and it is— I object to it.

Court: Sustained.

Special Prosecutor: I'll rephrase.

Veteto's Counsel: Your Honor, I ask that— the Judge to instruct the jury to disregard.

Court: You'll disregard.

Veteto's Counsel: Your Honor, I move for a mistrial.

Court: That will be denied.

The State immediately continued its questioning of the chief with the following:

Special Prosecutor: Now, you made him aware of the charges, did you not?

Childress: Yes, I did.

Special Prosecutor: Did you offer him the opportunity to make a statement?

Childress: Yes, he was offered the opportunity.

Special Prosecutor: Did Mr. Veteto want to make a statement to you—

Veteto's Counsel: Your Honor, I object to that. Now, that is his Fifth Amendment right and there— you cannot—

Court: I'll sustain—

Veteto's Counsel:— use that intimation—

Court:— I'll sustain.

Veteto's Counsel: Your Honor, ask you to instruct the jury to disregard that.

Court: You'll disregard.

Veteto's Counsel: Your Honor, I move for a mistrial.

Court: Post arrest— post arrest silence is— is not any evidence. You can't consider it.

Veteto's Counsel: Move for a mistrial, Your Honor.

Court: Deny.

After re-direct examination, the State, on re-cross, again entered into this same prohibited area by asking Childress:

Special Prosecutor: Did you— you did give him an opportunity to talk to you and the Chief?

Childress: Yes—

Veteto's Counsel: Your Honor, I am going to object to that. He was arrested—

Special Prosecutor: He asked that. He very well— he just asked that himself.

Court: I'll allow that question.

Special Prosecutor: Thank you.

Special Prosecutor: And did he make any statement to you—

Court: I won't allow that question—

Veteto's Counsel: Your Honor, I am going to object.

Court: Sustain that objection.

Veteto's Counsel: And I want the jury instructed, Your Honor.

Court: You'll disregard.

Veteto's Counsel: Move for a mistrial.

Court: Overruled.

## Applicable Law

The United States Supreme Court set the standard in this area. Under the U.S. Constitution, the State cannot use the post-arrest silence of an accused, after assurances such as *Miranda* warnings, to impeach an explanation subsequently offered at trial. *Doyle v. State,* 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91. (1976); *see also Greer v. Miller,* 483 U.S. 756, 763, 107 S.Ct. 3102, 3107, 97 L.Ed.2d 618 (1987). After attempts by lower courts to broaden the language of *Doyle,* the Supreme Court reiterated its prohibition of the use of post-arrest, post-*Miranda* silence against the accused for impeachment purposes. *Fletcher v. Weir,* 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982). The decision was then left to the states to determine under their rules what was proper impeachment. *Id; Sanchez v. State,* 707 S.W.2d 575, 578 (Tex.Crim.App.1986). Based on two rationales, the Texas Court of Criminal Appeals determined that in addition to the *Doyle/Fletcher* prohibition, post-arrest, *pre-Miranda* silence also may not be used against an accused at trial. *Id.* First, the Court reasoned, the use would violate the accused's right to be free from self incrimination under Article I, Section 10 of the Texas Constitution. *Id.* Second, the use would be improper impeachment under the evidentiary rules since, absent actual inconsistency, post-arrest silence is not probative as prior inconsistent conduct. *Id.* at 578, 582.

█ It is important to note that the State argues Veteto did not preserve his complaint because his objections were too general. Also, in making a general objection, the State suggests that he did not invoke the protections of the Texas Constitution. We find these arguments unpersuasive. In reviewing the questions, the objections, the responses, and the trial court's interaction, it is clear that the objections were obvious to the trial court; thus, no waiver resulted from a general or imprecise objection. *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App.1977); *Eisenhauer v. State,* 754 S.W.2d 159, 161 (Tex.Crim.App.), *cert. denied,* 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988), *rev'd on other grounds,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991). The thrust of

Veteto's objections was directed toward the use of post-arrest silence. His failure to articulate a specific citation or rule number should not waive review of the potential error. *See Eisenhauer*, 754 S.W.2d at 161. *Cf., Samuel v. State*, 688 S.W.2d 492, 495 n. 3 (Tex.Crim.App.1985).

■ We conclude that the State's questions to Childress impermissibly commented on Veteto's post-arrest silence. Veteto had not yet testified; thus, no "actual inconsistency" had been developed as required by *Sanchez* to enable proof of prior inconsistent conduct.

### Was the Prejudice Cured?

■ Potential prejudice resulting from a comment on post-arrest silence might be cured by an instruction to disregard. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex.Crim.App.1988). An instruction to disregard will be presumed effective unless the facts of the case "suggest[s] the impossibility of withdrawing the impression produced on the minds of the jury[.]." *Id.* (*citing Hatcher v. State*, 43 Tex.Crim. 237, 65 S.W. 97, 98 (1901)). The effectiveness of a curative instruction is determined on a case-by-case basis. *Fletcher v. State*, 852 S.W.2d 271, 275 (Tex.App.—Dallas 1993, pet. ref'd).

■ Although not expressly adopted as exhaustive or definitive, the Court of Criminal Appeals has relied on several factors to determine whether an instruction to disregard cured the prejudicial effect of the comment. *Waldo*, 746 S.W.2d at 754. They are as follows:

1. The nature of the error;
2. The persistence of the prosecution in committing the error;
3. The flagrancy of the violation;
4. The particular instruction given;
5. The weight of the incriminating evidence; and
6. The harm to the accused as measured by the severity of the sentence.

*Id.* We shall also rely on these factors. *See Mendoza v. State*, 959 S.W.2d 321, 324 (Tex.App.—Waco 1997, pet. ref'd).

### Nature of the Error

The nature of the error made by the special prosecutor is not such that an instruction to disregard can never cure it. *Waldo*, 746 S.W.2d at 754.

### Persistence and Flagrancy

In the case at hand, the State bluntly asked Chief Childress whether Veteto denied the charges pending against him at the time of his arrest. The trial court sustained Veteto's objection, instructed the jury to disregard, and denied the motion for mistrial. Three questions later, the State pursued this same line of questioning by inquiring if Veteto wanted to make a statement after being informed of the charges against him. Again, Veteto's objection was sustained. After Veteto again moved for a mistrial, the trial court told the jury that post-arrest silence was not evidence and could not be considered. Then during re-cross examination, the State again repeated the question regarding Veteto's willingness to make a statement regarding the charges for which he was being arrested. Simultaneous to Veteto's objection, the trial court informed the State that the question would not be allowed. Veteto's motions for mistrial were denied.

Although the State did not mention post-arrest silence again after the third objection, we conclude the State persistently and flagrantly pursued an improper line of questioning. It ignored the trial court's initial ruling and inquired about the same subject matter a second time. It then ignored the trial court's second ruling when propounding the same question a third time during re-cross examination.

### Particular Instruction

In analyzing the particular instructions given, it is necessary to look at each instruction separately. After the first objection, Veteto requested the trial court to

instruct the jury to disregard. The trial court complied by saying, "You'll disregard." After the second objection, the trial court again responded to Veteto's request for an instruction by saying, "You'll disregard." However, after the motion for mistrial, the trial court added, "[P]ost arrest silence is ... not any evidence. You can't consider it." This addition was much more informative than the previous instruction. Yet, after the third objection, the trial court reverted to the instruction, "You'll disregard."

As stated previously, the second instruction with the added comment by the trial court was informative. However, the instruction used after the first and third objections, based upon the facts and circumstances presented by this record, was not particularly effective in curing the prejudice created by the State. Because of the constitutional magnitude of this issue, had the instructions been more informative, a different conclusion might have resulted. An instruction specifically informing the jury to disregard the last comment of the witness has been held to be adequate. *Waldo*, 746 S.W.2d at 755–756. Likewise, an instruction that the court assumed the jury would follow the court's instructions and not consider the line of questioning has also been held to be adequate. *Fletcher*, 852 S.W.2d at 275.

### Weight of Incriminating Evidence

A.L. testified that Veteto touched her breast and inserted his finger into her vagina on three separate occasions. Veteto denied each incident. Although only an external exam was conducted, A.L.'s doctor testified he could find no signs of sexual abuse. It is important to note that the exam was performed at least seven months after the last incident. Additionally, Veteto presented evidence that each of the incidents could not have happened on the dates alleged. He also presented testimony to persuade the jury that A.L. had an active imagination and had convinced herself the assaults were real.

Although the evidence of Veteto's guilt is not overwhelming, it is not irrational for the jury to have believed A.L.'s testimony. Under these particular circumstances the inference to Veteto's silence could have been considered by the jury as evidence of his guilt.

### Severity of Punishment

Veteto was convicted of three counts of Aggravated Sexual Assault, each a first degree felony. Tex. Pen.Code Ann. § 22.021(e) (Vernon Supp.2000). Punishment for a first degree felony is imprisonment for five to ninety-nine years or life and a fine of up to $10,000. Tex. Pen.Code Ann. § 12.32 (Vernon 1994). Veteto received a 15 year sentence and a $5,000 fine for each count. His request for probation was denied. Considering the nature of the offense, we are unable to conclude that the questions by the State caused an improper increase in Veteto's punishment. *See Waldo*, 746 S.W.2d at 757; *Fletcher*, 852 S.W.2d at 276.

### Summary of Considerations

Any reference to Veteto's post-arrest silence by the State could have been removed from the minds of the jury by an effective instruction to disregard; however, we cannot conclusively say that it had been removed in this particular situation. Because of the flagrance and persistence by the State in pursuing this line of questioning, and because of the simplicity of the trial court's instructions when constitutional guarantees were at stake, we conclude the instructions did not effectively cure the prejudice caused by the State to the extent that we can be certain the impression produced on the minds of the jury was withdrawn.

Having determined that the questions were improper comments on Veteto's post-arrest silence and that we could not say the prejudice was cured by the trial court's instructions, we conclude it was error for the trial court to deny Veteto's motion for mistrial. Thus, we must now conduct a harm analysis to determine whether the improper questions contributed to Veteto's

conviction or punishment. TEX.R.APP. P. 44.2(a); *See Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App.), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995).

## Constitutional Error Harm Analysis

 According to the Texas Rules of Appellate Procedure, if the record in a criminal case reveals constitutional error we *must* reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX.R. APP. 44.2(a). When conducting a harm analysis of this type, we consider a number of factors which include: the source and nature of the error, the extent to which it was emphasized by the State, the weight a juror would probably place upon the error, and whether finding the error harmless would encourage the State to repeat it with impunity. *Dinkins*, 894 S.W.2d at 356; *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim. App.1989).

Clearly, the State was the source of the error and persistently pursued the same type of question two more times after the first sustained objection. When the trial court interrupted the State, declaring it would not allow the question, the State finally abandoned the attempt to elicit post-arrest silence. It was never mentioned again.

The State called the first three witnesses, and Chief Childress was the sixth of a total of seven witnesses called on the first day of the trial. Veteto was in the middle of his defense when the jury retired for the evening after the seventh witness. The trial proceeded the next day with Veteto as the first witness. The State made no further attempt to ask about Veteto's post-arrest silence, and did not mention it in final argument.

We do not know what might have gone through a juror's mind. It is certainly conceivable that a juror thought they should know about any post-arrest conversations or silence of Veteto. They may have believed Veteto was trying to hide something and the special prosecutor was doing everything he could to present it to them. The mere fact Veteto had to repeatedly object to the improper questions may have raised the prospect that he was trying to hide something from the jury.

Although it is unlikely the jury placed much weight on the questions asked Chief Childress, the State should never have inquired into Veteto's post-arrest silence. This was an improper line of inquiry because the State had not established an actual inconsistent position taken by Veteto prior to asking about his post-arrest silence. *See Sanchez*, 707 S.W.2d at 582; *Cf., Turner v. State*, 719 S.W.2d 190, 193 (Tex.Crim.App.1986). Quite possibly, had the State only asked one question regarding Veteto's post-arrest silence and then abandoned the pursuit immediately after the first sustained objection, the record might have shown the error was harmless beyond a reasonable doubt. But, because the special prosecutor immediately persisted in asking substantially the same question and again asked the exact question later in the witness' testimony, we cannot say the error caused by the State did not, beyond a reasonable doubt, contribute to Veteto's conviction. To hold otherwise, we believe, would encourage the State to repeat this error. Therefore, we are compelled to sustain Veteto's fourth issue.

## IMPROPER QUESTION VS. FALSE IMPRESSION

 In his first issue presented to us, Veteto contends that the trial court erred in overruling his objection to a question posed by the special prosecutor regarding a prior act of misconduct.[1] To fully under-

---

1. Veteto refers to this incident as a prior conviction; however, no actual conviction was established at this juncture.

stand the following discussion of the events, it is necessary to know that this case had already been tried twice. These prior trials or the results thereof can have *no impact on our determination of error or the harm analysis on this trial.*[2] Error, if any, must be found in the record on the case on appeal and not elsewhere. *See Brown v. McGonagill,* 940 S.W.2d 178, 179 (Tex.App.—San Antonio 1996, no writ.). However, it was so obvious to the jury that there had been prior trials that upon the conclusion of the trial, the judge remarked, "as you well know, this is the ... third time now this case has been tried...."

During the cross examination of Veteto, the special prosecutor engaged in a line of questions that attempted to illicit sympathy for A.L. The questions asked Veteto to acknowledge that this process was difficult on A.L. and that this was the first trial at which she had cried. The relevance of this line of questions is suspect. At the beginning of re-direct examination, the following exchange took place:

> Veteto's Counsel: I just have a couple of things. [The Special Prosecutor] talked to you about *these* allegations. This is not your first time to go through *these* allegations, either, is it? He was talking about the young lady *and the difficulty on her.* (emphasis added).
>
> Veteto: Yes.
>
> Veteto's Counsel: And this is not your first time, either, is it?
>
> Veteto: No.

Obviously, this was in response to the special prosecutor's questions on cross examination of Veteto attempting to evoke sympathy for A.L.

Then, during re-cross examination of Veteto, the following exchange took place:

> Special Prosecutor: Did you tell this jury on the very first question he asked you that this is not the first time you have had to go through such acquisitions (sic)?
>
> Veteto's Counsel: These acquisitions (sic), Your Honor, is what I asked him.
>
> Special Prosecutor: In fact, you have gone through accusations in the past involving other children, haven't you?
>
> Veteto's Counsel: Your Honor, I'm going to object to that. That's absolutely— that is absolutely, undeniably out of order.

A discussion was held at the bench out of the hearing of the jury wherein the special prosecutor explained to the trial court that Veteto's counsel had asked him questions to elicit sympathy from the jury. The State argued it was entitled to effectively impeach Veteto with the fact that this was not the first time he had endured "such" allegations. Veteto's counsel explained that he was questioning Veteto about the specific accusations at hand, but the State countered that Veteto left an impression on the jury regarding his endurance of the allegations against him.[3] Veteto again protested that the question was prejudicial and was an attempt to place past conduct before the jury and try him based on the past conduct. The trial court acknowledged it had noted the difference between the question using the term "these" allegations versus the special prosecutor's broadening of the question to "such" allegations. However, the trial court agreed with the State that the prior questioning by counsel had left a false impression on the jury and told the State that the court would only allow the one question. The State then asked Veteto in the presence of the jury, "... this is not the first time you have had to endure accusations made against you of sexual

---

2. The trial court should make every reasonable effort to keep the fact of prior trials out of evidence.

3. In its brief, the State argues that the "rule of optional completeness" controls in this situation. We have considered this argument and find that it is without merit.

impropriety by other little girls, is it?" Veteto replied, "No."

## Applicable Law

 Generally, a witness' credibility cannot be impeached with prior acts of misconduct unless the misconduct resulted in a final conviction of a felony offense or a crime of moral turpitude. *See* Tex.R. Evid. 608(b); 609(a). An exception exists when the witness, during direct examination, leaves a false impression as to the extent of his prior conduct which may include arrests, convictions, charges, or general "trouble". *See Ochoa v. State,* 481 S.W.2d 847, 850 (Tex.Crim.App.1972); *Nelson v. State,* 503 S.W.2d 543, 545 (Tex. Crim.App.1974); *Prescott v. State,* 744 S.W.2d 128, 130–131 (Tex.Crim.App.1988); *Delk v. State,* 855 S.W.2d 700, 704 (Tex. Crim.App.), *cert. denied,* 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993); *Turner v. State,* 4 S.W.3d 74, 79 (Tex.App.—Waco 1999, n.p.h.). The rebuttal evidence to correct a false impression, however, may not exceed the scope of the question posed to the witness or the answer given to it. *Rodriguez v. State,* 974 S.W.2d 364, 368–369 (Tex.App.—Amarillo 1998, pet. ref'd).

 In the instant case, Veteto was asked whether this was not the first time he had endured "these accusations" against him. From the entirety of Veteto's testimony, we easily interpret the words "these accusations" to mean the current accusations for which he was on trial for the third time. *Cf. Prescott v. State,* 744 S.W.2d at 131–132. Because of the multiple trials, Veteto responded that, indeed, it was not the first time to be subjected to the current accusations. We fail to see where the false impression lies with this question and answer. In fact, the record indicates that the State initiated the line of questioning on cross examination which prompted the questions by Veteto's counsel.[4] Nevertheless, Veteto did not

make any blanket assertions regarding the current accusations. He did not say that it was the first time to endure these types of allegations. He did not say that he had never been accused of sexual misconduct. Agreeing that this was not the first time to endure the current accusations was not an open invitation to be impeached with prior acts of misconduct. Thus, the trial court erred in allowing the State to question Veteto about prior accusations of sexual impropriety.

## Non–Constitutional Error Harm Analysis

 We must next determine whether Veteto was harmed. We consider this type of error to be non-constitutional which must be disregarded if it does not affect Veteto's substantial rights. *See* Tex. R.App. P. 44.2(b). A substantial right is affected when the record shows that the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997)(*citing Kotteakos v. U.S.,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Thus, we review the entire record to determine whether the error had more than a slight influence on the verdict. *Fowler v. State,* 958 S.W.2d 853, 866 (Tex.App.—Waco 1997), *aff'd,* 991 S.W.2d 258 (Tex.Crim.App.1999). If we find that it did, we must conclude that the error affected Veteto's rights in such a way as to require a new trial. *Id.* Even if we have grave doubts about its effect on the outcome, we should find that the error was such as to require a new trial. *Id.* Otherwise, we should disregard the error. *Id.*

In reviewing this record in its entirety, we conclude that this particular error, in and of itself, had more than a slight influence on the verdict. There was no physical evidence of a sexual assault. There were no witnesses to the alleged assaults.

---

4. The exception does not apply if the false impression was created by the State's cross examination of the defendant. *Shipman v.* *State,* 604 S.W.2d 182, 184–185 (Tex.Crim. App.1980).

The testimony of A.L. that she was assaulted was directly contradicted by the testimony of Veteto that he did not assault her. The result of this trial revolved around the credibility of these two witnesses. We conclude that the answer to this improper and highly inflammatory question by the special prosecutor had more than a slight influence on the verdict.[5] Veteto's first issue is also sustained.

## OTHER ALLEGED ERRORS

Having found error requiring reversal on two issues, we must now address additional issues asserted by Veteto which are likely to arise during a new trial. *See Cook v. State,* 940 S.W.2d 623, 627–628 (Tex.Crim.App.1996); *Dickson v. State,* 986 S.W.2d 799, 804. (Tex.App.—Waco 1999, no pet.).

### Jury Charge

In his fifth issue, Veteto complains that the trial court's charge to the jury on guilt/innocence improperly commented on the weight of the evidence. Veteto particularly complains about paragraph nine which is as follows:

> The law provides the testimony of the victim alone, if believed by you beyond a reasonable doubt, need not be supported by other evidence before a finding of guilt can be returned. That is to say, the testimony of [A.L.], standing alone, if believed by you beyond a reasonable doubt, is sufficient proof to support a finding of guilt.

No objection was raised pertaining to this section of the charge.

The Code of Criminal Procedure provides that a conviction of aggravated sexual assault is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed someone, not the perpetrator, of the offense within one year. TEX.CODE CRIM. PROC. ANN. art. 38.07 (Vernon Pamp.2000).

The requirement of informing another person of the offense does not apply if the victim was younger than 18 years of age at the time of the offense. *Id.* As set out above, the trial court charged the jury that the testimony of the victim alone, if believed beyond a reasonable doubt, need not be supported by other evidence. The court then applied that instruction to A.L.'s testimony.

Although an accurate statement of the law, we agree with Veteto that the charge still had the force and effect of an instruction that a conviction could be had only on A.L.'s testimony; it singled out her testimony. The Court of Criminal Appeals has previously held that even though the legislature provides for convictions based on uncorroborated evidence, a charge based on that evidence is an improper comment on the weight of the evidence. *Lemasters v. State,* 164 Tex.Crim. 108, 297 S.W.2d 170, 171 (1956). As was in *Lemasters,* the jury charge here is a comment on the weight of the evidence which is improper. TEX.CODE CRIM. PROC. ANN. art 36.14 (Vernon Supp.2000).

Veteto also believes the trial court commented on the weight of the evidence in paragraph nine by failing to use the word "alleged" to describe the victim. The sole issue of Veteto's case was whether he committed the various assaults on A.L. Referring to A.L. as the victim instead of the alleged victim lends credence to her testimony that the assaults occurred and that she was, indeed, a victim. This situation is similar to a case where consent is the sole issue in a rape trial. The Eastland Court of Appeals has held in a rape case involving consent that a reference to the complainant as a victim in the charge to the jury implied that the sexual encounter was not consented to and was thus an improper comment on the weight of the evidence by the court. *Talkington v.*

---

5. Veteto included an affidavit of a jury member as an appendix to his brief. We do not consider this affidavit because it does not

reflect any improper *outside* influence was brought to bear on the jury. *See* TEX.R. EVID. 606(b).

*State,* 682 S.W.2d 674, 675 (Tex.App.—Eastland 1984, pet. ref'd). Thus, the trial court also commented on the weight of the evidence by failing to refer to A.L. as the "alleged" victim.

In view of the fact we have reversed this cause on issues one and four, there is no need to conduct a harm analysis.

### Improper Impeachment

■ In his sixth issue, Veteto argues that the trial court abused its discretion in permitting the State to impeach his credibility at punishment by accusing him of failing to disclose his prior offenses in the guilt/innocence phase of the trial. Over objection, the State accused Veteto of failing to tell the jury at guilt/innocence that he had been exposing himself to "little girls for a long, long time." Veteto agreed that he had not revealed such information during the guilt/innocence phase of the trial.

Because an accused may not be tried for a collateral crime or for being a criminal generally, there is no requirement that Veteto expose his past convictions or misconduct to the jury during the guilt/innocence phase of his trial. *See* TEX.R. EVID. 404(b); *White v. State,* 958 S.W.2d 460, 466 (Tex.App.—Waco 1997, no pet.). By this point in time, the State had already introduced Veteto's prior misconduct to the jury. The question merely verbalized what was already apparent; that being, Veteto had prior acts of misconduct which were not revealed prior to the jury's determination of guilt. While the inference made by the State's question was not necessarily proper, we cannot say that the trial court acted without reference to any guiding principals or authority in allowing this question. *See Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1990); *Anderson v. State,* 896 S.W.2d 578, 579 (Tex.App.—Fort Worth 1995, pet. ref'd).

### Special Prosecutor

■ Veteto's seventh issue proposes that the trial court abused its discretion in permitting a special prosecutor, retained by A.L.'s family, to participate in Veteto's trial. It is well settled that a claim of denial of due process by permitting a privately retained attorney to participate in a criminal prosecution when the district attorney consents and retains control and management of the prosecution is generally without merit. *See Lopez v. State,* 437 S.W.2d 268, 269 (Tex.Crim.App.1968); *Davis v. State,* 513 S.W.2d 928, 931 (Tex.Crim.App.1974); *Ballard v. State,* 519 S.W.2d 426, 428 (Tex.Crim.App.1974); *Fitzgerald v. State,* 722 S.W.2d 817, 820 (Tex.App.—Tyler 1987), *aff'd,* 782 S.W.2d 876 (Tex.Crim.App.1990). Veteto's primary complaint is that the special prosecutor rather than the district attorney controlled the progress of the trial.

It is clear from the record that the district attorney not only consented to, but welcomed the assistance by the special prosecutor. On guilt/innocence, the special prosecutor presented the opening statement for the State and conducted the direct examination of the State's first witness. The district attorney conducted the direct examination of A.L. As for the defense witnesses, the special prosecutor cross examined Rex Childress, Veteto, and Virginia Christian. The district attorney cross examined the other three witnesses. When looking at the order of the witnesses, the special prosecutor took every other one. The district attorney opened the State's argument while the special prosecutor closed. At punishment, the special prosecutor again cross examined Veteto, and the district attorney opened and closed the State's argument. With this in mind, the record does not indicate that the district attorney did not manage or control the trial. Therefore, a finding that the trial court abused its discretion in permitting the special prosecutor to participate in Veteto's trial is not warranted.

We note, however, that although the use of the special prosecutor was not error in and of itself, it is the conduct of the special

prosecutor that has caused the reversal of this judgment. From the record before us, there is ample evidence upon which the State could obtain a valid conviction if the jury finds the evidence credible. There was simply no need for the State to resort to some of the questionable tactics used by the special prosecutor during this trial. We will not discuss all of them because some were not objected to, and thus no complaint was preserved, and some were properly objected to, resulting in the reversal of his case.

### Cumulative Fines

In his ninth issue, Veteto contends his sentence was improperly increased by the court's cumulation of the fines assessed in its judgment which was contrary to its oral pronouncement. We disagree. The jury sentenced Veteto in each of the three offenses to 15 years in the penitentiary and a $5,000 fine in accordance with the first part of § 3.03. Tex. Pen.Code Ann. § 3.03(a) (Vernon Supp.2000). The trial court announced in open court that the length of each sentence as well as each fine would run concurrently. The written judgment indicated that the fines had been cumulated.

The Texas Penal Code requires sentences to run concurrently where an accused is found guilty of more than one offense arising out of the same criminal episode. See Tex. Pen.Code Ann. § 3.03(a) (Vernon Supp.2000). The Court of Criminal Appeals has not interpreted the meaning of the term "sentence"; however, the long standing rule has been that fines are cumulated and the Penal Code does not alter that rule. *Mountain v. State*, 789 S.W.2d 663, 665 (Tex.App.— Houston [1st Dist.] 1990, pet. ref'd); Mills v. State, 848 S.W.2d 878, 880 (Tex.App.— Houston [1st Dist.] 1993, no pet.). The

Court has not taken issue with this interpretation, and neither will we. We find no error with the trial court's correction of its pronouncement of sentence which contravened this long standing rule.[6]

### OTHER ISSUES

With regards to his second, third and eighth issues, Veteto has failed to preserve his complaints. See Tex.R.App. P. 33.1. Accordingly, those issues are overruled.

Because we sustained Veteto's fourth and first issues, we feel it is unnecessary to discuss his first supplemental issue of ineffective assistance of counsel.

### CONCLUSION

Veteto's conviction is reversed, and this cause is remanded to the trial court for a new trial.

---

6. In a letter brief, Veteto points to *Coffey v. State*, 979 S.W.2d 326 (Tex.Crim.App.1998) for the proposition that an oral pronouncement of sentence controls over the written memorialization of the sentence. We note that in *Coffey*, the Court did not make this

rule absolute because it found a way to uphold the trial court's written judgment. Additionally, four judges concurred in the result but complained that the 'oral over written' rule was dicta. We agree.