NUMBER
13-01-491-CR

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

___________________________________________________________________

 

BRUCE MONTAGUE JAMES,                                                  Appellant,

 

                                                   v.

 

THE STATE OF TEXAS,                                                          Appellee.

___________________________________________________________________

 

                   On
appeal from the County Court at Law No. 3 

                                of
Jefferson County, Texas.

__________________________________________________________________

 

                                   O
P I N I O N

 

                  Before
Justices Dorsey, Hinojosa, and Rodriguez

                                Opinion
by Justice Rodriguez

 








Appellant, Bruce Montague James, brings this appeal following a
conviction for the offense of assault. 
By three points of error, James contends: (1) the facilities used for
his trial proceedings did not conform with the Americans with Disabilities Act
(ADA); (2) the trial court committed error in sentencing James when no proof
was adduced proving the trial court had jurisdiction; and (3) the trial court
erred in failing to grant a mistrial because the prosecutor injected
insinuations of an alleged extraneous offense. 
We affirm.

I.  BACKGROUND

 James, who has cerebral
palsy, was being pulled in a wheelchair by his servant dog in the neighborhood
where he lived.  The victim, John Doiron,
was using a small front loader called a Bobcat, to spread dirt in his front
yard.  The noise of the Bobcat scared the
servant dog, causing it to pull James=s wheelchair
off course and into a ditch.  James=s dog ran
home.  Later, after James collected
himself and retrieved his dog, they again passed Doiron=s house.  The Bobcat scared the dog a second time, and
James again fell from his wheelchair and to the ground.[1]  While on the ground, James sprayed a canister
of pepper spray toward Doiron, causing his eyes and skin to burn.[2]  James was charged by information with the
offense of assault, and, pursuant to a jury trial, was found guilty.  Electing to have the court set punishment,
James was sentenced to ninety days in jail, probated for one year, and fined
$200.00.

 








II.  COMPLIANCE WITH ADA

By his first point of error, James contends the trial court
erred in trying him in facilities which do not conform with the ADA.  See 42 U.S.C.A. ''12101-12213
(1995).  The State asserts James was not
denied access to the courtroom.

Title II of the ADA, applicable to public entities, provides
that no "qualified individual with a disability shall, by reason of such
disability, be excluded from participation in or be denied the benefits of the
services, programs, or activities of a public entity, or be subjected to
discrimination by any such entity." 
See id. ' 12132.  To establish a violation of Title II, James
must demonstrate:  (1) he is a qualified
individual within the meaning of the Act; (2) he is being excluded from
participation in, or being denied benefits of, services, programs, or
activities for which the public entity is responsible, or is otherwise being
discriminated against; and (3) such exclusion, denial of benefits, or
discrimination is by reason of his disability. 
Lightbourn v. County of El Paso, 118 F.3d 421, 428 (5th Cir.
1997), cert. denied, Lightbourn v. Garza, 522 U.S. 1052 (1998).








Prior to the beginning of trial, James requested a relocation
of the trial to a courtroom which he claimed would be more in compliance with
the provisions of the ADA.  He complained
of noncompliance with regard to the main courtroom entrance, the spectator
seating area, the party seating area, the witness stand, the jury box area, the
jury deliberation room, the jury toilet room, and the height of the table where
he would be seated.  See 28 C.F.R.
pt. 36, app. ABStandards for
Accessible Design (2001).

At the pre-trial motion hearing, while the trial court
acknowledged the courtroom was not in compliance with the ADA, it continued by
explaining that Aefforts were
made to provide Mr. James with a courtroom that would afford him an
opportunity, without discriminating against him, a place where he could have
his day in court.@  The court observed that: (1) special areas in
the spectator seating area and party seating area were made ready so that James
and any citizen with a disability similar to his would be able to observe or
participate in the courtroom proceedings without adding to their discomfort;
(2) James was able to enter and exit the courtroom without leaving his
wheelchair, and without any undue hardship; (3) the witness stand was altered
and a ramp created, so James could move to that area and give his testimony; and
(4) although the jury box, jury deliberation room, and jury toilet were not ADA
ready, they would not be used in this case because there were no persons with
disabilities on the jury panel.  The
court concluded it had Amade every
effort to assure the comfort and the convenience of Mr. James as well as to
assure his right to a fair trial, which also includes the right to be
comfortable in his trial.@








Without providing this Court with supporting authority, James
urges non-compliance with the ADA destroys venue.  See Tex.
R. App. P. 38.1(h) (brief must contain support for its argument in the
form of appropriate citations to authorities and to the record).  The regulations of Title II of the ADA,
however, do not require a public entity to make existing facilities wheelchair
accessible in every respect, as long as the services, programs and activities
offered are otherwise accessible to the plaintiff.  See Tyler v. City of Manhattan,  857 F.Supp. 800, 816 (D. Kan. 1994), aff=d, 118 F.3d 1400
(10th Cir. 1997).  In this case, James
was able to participate fully in all proceedings.  He sat with his attorney and provided his
testimony from the witness stand.  Other
than his contentions, James provided no evidence that he was required to attend
the proceedings in an inaccessible location in the courthouse.  James did not establish that he was excluded
from participation in the trial of his case. 
We conclude there was no error, and overrule his first point of error.

III.  JURISDICTION

By his second point of error, James contends the trial court
committed fundamental error in sentencing him when there was no proof of  jurisdiction. 
James argues that proof of the state in which the offense occurred is
indispensable to the invocation of a court=s jurisdiction,
and because the State did not prove the state in which the offense occurred,
the court lacked jurisdiction to sentence him.

James testified that his residence was in Beaumont, and that it
was located about four houses from Doiron=s home, where
the incident occurred.  James also
entered his medical records into evidence which established his residence as A9520 Broun,
Beaumont, Texas 77707.@  In addition, several witnesses employed by
the City of Beaumont, testified the assault occurred in Jefferson County.  Furthermore, James concedes the State proved
the assault occurred in Aa Jefferson
County.@








Jurisdiction, like any other requisite of an offense, can be proven
circumstantially.  Vaughn v. State,
607 S.W.2d 914, 920 (Tex. Crim. App. 1980). 
Accordingly, we conclude the circumstantial evidence established
jurisdiction in Texas.  The trial court
did not err in sentencing James.  We
overrule point of error two.

III.  EXTRANEOUS OFFENSE

By his third point of error, James contends the trial court
erred in failing to grant a mistrial because the prosecutor injected
insinuations that James was armed with a handgun.  The State asserts evidence regarding a weapon
is not an extraneous offense and alternatively, if this Court determines it is
an extraneous offense, it is not harmful. 

An extraneous offense is defined as any act of misconduct,
whether prosecuted or not, that is not shown in the charging papers.  Nunez v. State, 27 S.W.3d 210, 213 (Tex.
App.BEl Paso 2000,
no pet.).  Evidence of an extraneous
offense must, by definition, entail evidence of the defendant=s prior
criminal conduct.  McKay v. State,
707 S.W.2d 23, 31-32 (Tex. Crim. App. 1985). 
If the complained of evidence does not demonstrate the defendant was in
some way connected to an offense, an extraneous offense is not established.  Harris v. State, 738 S.W.2d 207, 224
(Tex. Crim. App. 1986).  








In the present case, neither the prosecution=s nor witnesses= statements
implicated James in an extraneous offense. 
The statements do not even imply any prior offense was committed.  The ambulance operator=s statement, Awe have a gun@ does not
establish James was connected with another offense.  The second reference to a weapon was nothing
more than the prosecutor warning the witness not to mention anything regarding
a weapon.  Furthermore, the prosecutor=s question, ADo you have a
handgun, James?@ does not rise
to the level of an extraneous offense.

Nevertheless, even if we were to conclude the statements by the
prosecution and witnesses were evidence of an extraneous offense, the trial court=s instructions
to disregard cured the prejudicial effect. 
Ovalle v. State, 13 S.W.3d 774, 783-84 (Tex. Crim. App.
2000).  The mere asking of an improper
question will not constitute reversible error unless the question results in
obvious harm to the accused.  Brown v.
State, 692 S.W.2d 497, 501 (Tex. Crim. App. 1985).  An instruction to disregard will be presumed
effective unless the facts of the case Asuggests the
impossibility of withdrawing the impression produced on the minds of the jury.@  Waldo v. State, 746 S.W.2d 750, 754
(Tex. Crim. App. 1988) (citing Hatcher v. State, 43 Tex. Crim. 237, 65
S.W. 97, 98 (1901)).  Although not
expressly adopted as exhaustive or definitive, the Texas Court of Criminal
Appeals has relied on several factors to determine whether an instruction to
disregard cured the prejudicial effect.  Id.;
Veteto v. State, 8 S.W.3d 805, 811 (Tex. App.BWaco 2000, pet.
ref=d).  The factors include:  1) the nature of the error; 2) the
persistence of the prosecution in committing the error; 3) the flagrancy of the
violation; 4) the particular instruction given; 5) the weight of the
incriminating evidence; and 6) the harm to the accused as measured by the
severity of the sentence.  Waldo,
746 S.W.2d at 754; Veteto, 8 S.W.3d at 811.








Applying these factors to the case at hand, we conclude any
prejudice caused by the statements was cured by the trial court=s instructions.
 Our review of the record reveals the
first reference to a Agun@ was only a
reference to the can of mace; the second reference to a Aweapon@ was the
prosecutor=s attempt to
admonish the witness not to mention it again; and the final reference did not
imply owning a weapon was an act of misconduct or an extraneous offense.  Each of these references was followed
immediately by a sustained objection and a curative instruction by the trial
court.  The prejudicial effect of the
question by the prosecution was not of such a nature that it could not be cured
by an instruction to disregard.  Id.  Thus, the trial court did not err in
refusing to grant a mistrial on this basis. 
We overrule James=s third point.

Accordingly, we affirm the judgment of the trial court.                        

 

NELDA
V. RODRIGUEZ

Justice

 

Publish.

Tex.
R. App. P.
47.3.

 

Opinion delivered and
filed

this 29th day of
August, 2002.

 











[1]There
was disagreement by both parties regarding the second fall by James.  James testified it was an accident, while
Doiron testified James threw himself out of the wheelchair intentionally.





[2]James
testified he sprayed the pepper spray in self defense, stating Doiron was going
to run over him with the Bobcat.  Doiron
testified he was not backing up the Bobcat to run over James, and James was never
in danger.