J-A25039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE HOLIDAY | : | |
| | : | |
| Appellant | : | No. 870 WDA 2022 |

Appeal from the Judgment of Sentence Entered June 6, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000001-2021

BEFORE:   BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED: December 27, 2023**

George Holiday appeals from the judgment of sentence imposed following a jury trial in which he was convicted of rape by forcible compulsion, involuntary deviate sexual intercourse by forcible compulsion, unlawful contact with a minor, sexual assault, aggravated indecent assault, corruption of minors, indecent assault, and indecent exposure.[1] For these offenses, Holiday was sentenced to an aggregate term of thirty-three to sixty-six years of incarceration. On appeal, Holiday contends that Pennsylvania Suggested Criminal Jury Instruction 4.13B is violative of a defendant's right to due process under both the United States and Pennsylvania Constitutions. *See* Pa.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S. § 3121(a)(1); 18 Pa.C.S. § 3123(a)(1); 18 Pa.C.S. § 6318(a)(1); 18 Pa.C.S. § 3124.1; 18 Pa.C.S. § 3125(a)(1); 18 Pa.C.S. § 6301(a)(1)(ii); 18 Pa.C.S. § 3126(a)(2); and 18 Pa.C.S. § 3127(a), respectively.

SSJI (Crim) 4.13B. Holiday also takes umbrage with the utilization of Instruction 4.13B's language during the *voir dire* questioning of prospective jurors. Given this Court's recent holding in ***Commonwealth v. Walker***, --- A.3d ---, 2023 PA Super 201, 2023 WL 6771059 (Pa. Super. 2023), in tandem with Holiday's failure to tie the holdings of other state decisions on which he exclusively relies to the discrete issue he has raised on appeal, we affirm.

We note the lower court's cogent summary of Holiday's trial:

> At trial, the victim in this case, fourteen-year-old K.F., testified that on November 28, 2020, when she was thirteen years old, she went to her Aunt Whitney's house to play games with her twelve-year-old cousin, T.D. She testified that … Holiday … was her aunt's boyfriend at the time and was in the home on that day. K.F. testified that when her aunt went upstairs to bed, [Holiday] put on a scary movie that he watched with K.F. and T.D. She testified that during the movie, [Holiday] moved closer to her and T.D. left the room to complete chores. When [Holiday] was alone with K.F., he pulled down his pants and scratched his penis. K.F. testified that [Holiday] pulled his pants down again and K.F. attempted to get off the couch. [Holiday] grabbed her and put her back down on the couch. [Holiday] pulled her pants down and laid on top of her. [Holiday] put his mouth on her vagina, then pulled his pants down. K.F. stated that [Holiday] put his penis into her vagina. Afterwards, she went upstairs and told T.D., through tears, that [Holiday] had raped her. K.F. did not immediately tell her aunt or her mother because she was scared. At T.D.'s insistence, K.F. disclosed to their grandmother the next day. The grandmother called K.F.'s mother who then called K.F. When K.F. disclosed that [Holiday] had raped her, K.F.'s mother hung up on her.

> T.D. testified that on November 28, 2020, she was watching a scary movie with [Holiday] and K.F. when T.D. went upstairs to clean up her room. After approximately twenty minutes, K.F. came upstairs and was crying. T.D. saw that K.F.'s pants were unbuttoned and the zipper was down. K.F. disclosed that [Holiday] raped her. The next morning, K.F. and T.D. called their

grandmother and told her that [Holiday] raped K.F.

Holly McDonald, K.F.'s grandmother, testified that she was close to K.F. in 2020 and the two of them spoke every day. K.F. told her what happened to her. McDonald stated that she hung up the phone and called K.F.'s mother and said that she needed to come home right away and speak with her daughter.

Whitney Dudley, K.F.'s aunt, testified that she was in a relationship with [Holiday] in November 2020. Dudley stated that she went to bed between 7:30 and 8:00 on November 28, 2020. When she went to bed, [Holiday] was watching a movie with her kids. Dudley woke up between 10:30 and 11:00, interacted briefly with T.D. and K.F., and went back to sleep. T.D woke her up again and asked to go to K.F.'s home. Dudley told her only if she did her chores first.

Tara McDonald, K.F.'s mother, testified that her mother, Holly McDonald, called her on the morning of November 29, 2020. Shortly thereafter, Tara McDonald called home and spoke with K.F. McDonald came home immediately and observed K.F. crying. K.F. disclosed that [Holiday] had sexually abused her.

Dr. Jennifer Clarke of the Child Advocacy Center at Children's Hospital of Pittsburgh, testified as an expert witness in pediatrics and the diagnosis of child abuse. Dr. Clark reviewed K.F.'s medical records, including the emergency room visit on November 29, 2020. K.F. had a forensic examination on December 3, 2020. She also had a physical examination on that day because she presented at the emergency room complaining of dysuria (pain with urination). Dr. Clarke conducted both the physical examination and the forensic interview. Dr. Clarke observed hymenal damage consistent with sexual penetration and concluded that K.F. had been sexually abused.

Trial Court Opinion, 10/17/22, 3-5 (record citations omitted).

Following both the jury's guilty verdict and subsequent sentencing imposed by the court, Holiday filed a timely post-sentence motion, which was afterwards denied. Thereafter, Holiday filed a timely notice of appeal. Correspondingly, the relevant parties have complied with their respective

obligations under Pennsylvania Rule of Appellate Procedure 1925. As such, we may proceed to review the substantive merits of Holiday's claim.

On appeal, Holiday asks:

1. Should Pa. SSJI (Crim) 4.13B, regarding the uncorroborated testimony of a victim in sexual offense cases, and a concomitant *voir dire* question based thereon, be disallowed as a violation of a defendant's right to due process under both the United States and Pennsylvania Constitutions?

**See** Appellant's Brief, at 2.

Replicated in full, the at-issue standard jury instruction reads:

The testimony of [name of victim] standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in this case. The testimony of the victim in a case such as this need not be supported by other evidence to sustain a conviction. Thus you may find the defendant guilty if the testimony of [name of victim] convinces you beyond a reasonable doubt that the defendant is guilty.

Pa. SSJI (Crim) 4.13B; **see also** 18 Pa.C.S. § 3106 (providing the source material for Instruction 4.13B and indicating that a complainant's credibility "shall be determined by the same standard as is the credibility of a complainant of any other crime[]" and that "[t]he testimony of a complainant need not be corroborated in prosecutions under this chapter[]").

To the extent that Holiday challenges whether the text of Instruction 4.13B is unconstitutional as a due process violation, Holiday did not object to the trial court's jury charge when given several opportunities to do so, **see, e.g.**, N.T., 3/7/22, at 507-12, 548, and, in fact, the jury never received an instruction based upon the language of Instruction 4.13B.

Instead, the Commonwealth, in its closing argument, touched upon Instruction's 4.13B's language. **See id**., at 491 ("A victim's testimony is needed, and that's why the law allows the Commonwealth to present a case and to prove the defendant's guilty beyond a reasonable doubt on the testimony of the victim alone. Single witness testimony standing alone, if believed by you beyond a reasonable doubt, is enough to find the defendant guilty."). Holiday did not object to this statement of law, which fairly mirrored the text of Instruction 4.13B and 18 Pa.C.S. § 3106. Therefore, any challenge to the Commonwealth's incorporation of Instruction 4.13B in its closing argument has been waived. **See State Farm Mut. Auto. Ins. Co. v. Dill**, 108 A.3d 882, 885 (Pa. Super. 2015) ("It is axiomatic that in order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.") (internal quotation marks and brackets omitted); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); **Commonwealth v. Cline**, 177 A.3d 922, 927 (Pa. Super. 2017) ("[I]ssues, even those of constitutional dimension, are waived if not raised in the trial court.") (citation omitted).

As to the *voir dire* element of his claim, prior to jury empanelment, the record reflects that Holiday's counsel raised a contemporaneous objection to the Commonwealth's proposed *voir dire*. **See** N.T., 3/3/22, at 10 (featuring

the trial court ruling on this objection despite no transcription of the *voir dire* process appearing of record). The lower court ultimately overruled this objection, concluding that *voir dire* questions directed to prospective jurors as to their ability to adjudicate guilt when faced with the testimony of a "single witness" has been approved by this Court in previous cases. *Id*. Therefore, we may review Holiday's argument specifically in the context of his *voir dire* due process challenge.

Holiday argues that "[t]here is no basis to judge sex offense cases under a different standard than other criminal cases." Appellant's Brief, at 7. Holiday believes that Instruction 4.13B, as written, violates a defendant's right to due process, which he contrasts with the evidentiary burden the Commonwealth must employ in cases where an alleged victim "claimed to have been shot with a gun or stabbed with a knife or punched in the face[,]" but also where "there was no medical evidence[.]" *Id*. Holiday argues that, here, there was "virtually [a] complete absence of medical evidence and [a] virtually complete absence of DNA evidence," which implicitly should have "created reasonable doubt in this case." *Id*. Holiday then cites to four non-Pennsylvania state court rulings, Indiana, Florida, Texas, and Iowa, for the proposition that particularized jury instructions, specifically singling out the complainant victim, have been disfavored or were given erroneously. *See id*., at 8-12.

Distilled down, Holiday believes that Instruction 4.13B "unfairly focuses the jury's attention on and highlights a single witness's testimony[,]" goes

beyond the "jury's function as fact-finder[,]" and imbues a confusing or misleading element into the process by using "the technical term 'uncorroborated[.]'" *Id*., at 6.

Beyond there being no transcript of *voir dire*, we note that Holiday did not attempt to paraphrase the complained-of *voir dire* question at the time the trial court ruled on the issue. This omission has, undoubtedly, hampered our ability to analyze his claim.[2]

Notwithstanding this defect, our Court's recent decision in **Walker**, *supra*, is on point insofar as it affirms the legal validity of a *voir dire* question premised on the contents of Instruction 4.13B. As summarized by the **Walker** Court:

> The scope of *voir dire* rests within the sound discretion of the trial court, and we will not reverse the court's decisions on *voir dire* absent a palpable abuse of discretion. The sole purpose of *voir dire* is the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court. Neither party is permitted to ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion as to what his decision will likely be under certain facts which may be developed in the trial of a case. *Voir dire* is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies.

**Walker**, 2023 WL 6771059 at *2 (internal citations and quotation marks omitted). Tracking the language of Instruction 4.13B, the Commonwealth in

---

[2] For example, while Holiday contests the use of "the technical term 'uncorroborated,'" Appellant's Brief, at 6, it is unclear whether the question posed to prospective jurors used this exact term.

***Walker*** asked prospective jurors during *voir dire* whether they would be able to follow the Pennsylvania principle of law that an alleged victim's testimony, standing alone and if believed beyond a reasonable doubt, is sufficient proof upon which a defendant can be found guilty in a sexual assault case. ***See id***., at *2.

The ***Walker*** Court found the Commonwealth's *voir dire* question was appropriate:

> The Commonwealth had a proper purpose for asking the *voir dire* question. Its purpose was to identify jurors who hold fixed beliefs that are untenable under Section 3106–specifically, the belief that a defendant's guilt cannot be established beyond a reasonable doubt in a rape case (1) without DNA or other forensic evidence or (2) when the case boils down to the word of the complainant versus the word of the defendant (a so-called "he said, she said" case). Any prospective juror holding either of these fixed beliefs had to be questioned further and had to be excused for cause if he could not set aside those beliefs.

***Id***., at *3 (citation omitted).

While Holiday's claim appears to be of a constitutional dimension, i.e., that his due process rights were violated by unfairly highlighting a complainant's testimony, which departs from the explicit issues addressed in ***Walker***[3], he has not shown Instruction 4.13B to be infirm under either the United States Constitution or the Pennsylvania Constitution. In fact, Holiday does not cite a single Pennsylvania case in support of his proposition. Instead,

---

[3] ***Walker*** dealt with whether the Commonwealth's *voir dire* question "did not meet the purposes of jury selection" and "misstated the burden of proof." 2023 WL 6771059 at *2.

- 8 -

Holiday references the fact that "[c]ourts in other states have analyzed the constitutionality and fairness of 'uncorroborated testimony' and 'single witness' jury instructions under a variety of rationales." Appellant's Brief, at 8. Holiday bolsters his argument by providing block quotes from cases that were adjudicated in four other states. *See Ludy v. State*, 784 N.E.2d 459 (Ind. 2003); *Brown v. State*, 11 So. 3d 428 (Fla. Dist. Ct. App. 2nd Dist. 2009); *Veteto v. State*, 8 S.W.3d 805 (Tex. Ct. App. 2000); *State v. Kraai*, 969 N.W.2d 487 (Iowa 2022). He then summarily concludes that this Court should "mandate a … nonparticularized jury instruction applicable to all witness testimony" in place of Instruction 4.13B, which would necessarily implicate *voir dire* questions that are predicated on those jury instructions. *See* Appellant's Brief, at 12 (citation omitted).

However, Holiday has failed to tether any of the non-Pennsylvania cases to the precepts or principles contained in either the United States Constitution or the Pennsylvania Constitution. Without any kind of analysis relevant to either of these foundational documents, there is no basis to conclude that Instruction 4.13B is unconstitutional. Although other states may have reached different conclusions regarding the viability of "single witness" testimony in the context of jury instructions, Holiday has failed to show that such an instruction is incompatible with either of the constitutions that governs the decisions of this Court.

With Holiday having supplied no clear basis upon which this Court could

conclude that Instruction 4.13B is unconstitutional, Holiday's single issue on appeal necessarily warrants no relief. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/27/2023