## Ex parte Kristin Hope WHEELER.

### No. 2–01–133–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 29, 2001.

Jerry J. Loftin, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Assistant Criminal District Attorney and Chief of the Appellate Section, Steven W. Conder, Lloyd Whelchel and Susannah Touzel, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Panel B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

## OPINION

LIVINGSTON, Justice.

Appellant Kristin Hope Wheeler appeals the denial of her petition for writ of habeas corpus. In a single point, appellant contends that the trial court erred in denying relief upon her claim of double jeopardy. Because we agree that a second trial is jeopardy-barred, we reverse and render.

### Facts

On July 21, 1999, Dr. David Mitchell attempted to cross a rural road to access his mailbox as appellant drove down that same road at approximately sixty-five miles per hour. Appellant, traveling about twenty miles per hour over the speed limit, was unable to avoid striking Mitchell, who later died of the injuries he sustained. Appellant was later indicted in two counts for manslaughter and criminally negligent homicide. The trial was held in Criminal District Court Number One and presided over by a visiting judge.

At trial, both the State and appellant called accident reconstruction experts. Appellant's expert, Alan Weckerling, who was her final witness, was extensively cross-examined and questioned on redirect. After appellant passed the witness following a redirect, the following exchange took place:

THE COURT: Anything else?

[PROSECUTOR]: Yes, Your Honor—

THE COURT: Thank you, sir. You may stand down.

[PROSECUTOR]: I have one more question, Judge.

THE COURT: I'm sorry. I misunderstood you.

### FURTHER RECROSS–EXAMINATION

[PROSECUTOR]: Are you aware that her insurance carrier found her at fault?

[DEFENSE]: Your Honor, may we approach?

THE COURT: You don't have to approach. Send the jury out.

(Jury not present)

THE COURT: Is there a motion in limine on that?

[PROSECUTOR]: Only if she ever paid, Judge—

[DEFENSE]: Your Honor, they filed a motion in limine not to go into any of the insurance reports. They now have made a statement unsupported in bad faith to create a mistrial in this case.

THE COURT: Do you want a mistrial?

The visiting judge heard arguments and granted appellant's motion for a mistrial. Appellant filed a petition for a writ of habeas corpus in the trial court when the State was ready to proceed to a second trial. The court's regular judge heard the petition and denied relief.

### Standard of Review

■ We generally review a trial court's decision to grant or deny relief on a writ of habeas corpus under an abuse of discretion standard of review. *Ex parte Mann*, 34 S.W.3d 716, 718 (Tex.App.—Fort Worth 2000, no pet.); *Ex parte Ayers*, 921 S.W.2d 438, 440 (Tex.App.—Houston [1st Dist.] 1996, no pet.). However, "an abuse of discretion review of trial court decisions is not necessarily appropriate in the context of application of law to facts when the decision does not turn on the credibility or demeanor of witnesses." *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim.App.1999); *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Instead, an appellate court must conduct a de novo review when "the trial judge is not in an appreciably better position than the reviewing court to make that determination." *Guzman*, 955 S.W.2d at 87; *see also Mann*, 34 S.W.3d at 718.

■ Here, no testimony on the merits of the petition was given at the habeas hearing, and the judge who heard the petition did not preside over appellant's trial. Thus, the trial court's rulings could not have turned on credibility and demeanor.[1] Because the trial court was not in any better position to determine questions of fact and to apply the law to those facts, we will undertake a de novo review. *See Guzman*, 955 S.W.2d at 87.

### Double Jeopardy

■ The double-jeopardy clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. CONST. amend. V. This clause protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Dixon*, 509 U.S. 688, 695–96, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d

---

1. The State argues that because the habeas judge stayed in contact with the visiting judge who presided over appellant's trial while the trial progressed and because the prosecutor regularly appears before the habeas judge, the habeas judge was, somehow, in a position to gauge the credibility of the prosecutor's explanations at the hearing on the motion for a mistrial. However, the State cites, and we have located, no authority that allows a judge to assess the credibility and demeanor of witnesses remotely.

556 (1993); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex.Crim.App.1990) (op. on reh'g). The Texas and United States Constitutions' double jeopardy provisions provide substantially identical protections. *Ex parte Mitchell*, 977 S.W.2d 575, 580 (Tex.Crim.App.1997), *cert. denied*, 525 U.S. 873, 119 S.Ct. 172, 142 L.Ed.2d 140 (1998); *Stephens v. State*, 806 S.W.2d 812, 815 (Tex.Crim.App.1990). Both constitutions are meant to restrain the government from subjecting persons accused of crimes to the mental, emotional, and financial hardship of repeated trials for the same offense. *See Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim.App.1996) (*"Bauder I"*).

■ A mistrial granted at the defendant's request in a criminal case usually does not implicate double jeopardy prohibitions, though, and poses no inhibition to further prosecution for the same offense in a new proceeding. *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971); *Torres v. State*, 614 S.W.2d 436, 441 (Tex.Crim.App. [Panel Op.] 1981). Essentially, we view a defendant's motion for mistrial as a deliberate election on her part to forego her right to have her guilt or innocence determined before the first trier of fact. *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982); *United States v. Scott*, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978).

■ When a mistrial is declared because of improper actions of the prosecutor, however, the double jeopardy prohibition may bar a second prosecution even if the defendant has consented to the mistrial. It is well settled under the federal constitution that the Fifth Amendment does not allow successive prosecutions for the same offense when the earlier proceeding was terminated at the defendant's request because the attorney representing the government *deliberately* provoked the defendant's motion for mistrial. *See Kennedy*, 456 U.S. at 676, 102 S.Ct. at 2089. The Texas Constitution goes a step beyond the protection provided under its federal counterpart and prohibits a subsequent trial when the prosecutor caused the mistrial *either intentionally or recklessly*. *See Ex parte Bauder*, 974 S.W.2d 729, 731 (Tex. Crim.App.1998) (*"Bauder II"*); *Bauder I*, 921 S.W.2d at 697; *see also* TEX. CONST. art. I, § 14. The court of criminal appeals announced in *Bauder I* that a subsequent prosecution is jeopardy-barred by the Texas Constitution after declaration of a mistrial when objectionable conduct of the prosecuting attorney was intended to induce a motion for mistrial or if "the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." *Bauder I*, 921 S.W.2d at 699. In *Bauder II*, the court of criminal appeals clarified the application of the prosecutor-misconduct bar to retrial, determining that the only question under the Texas Constitution's double-jeopardy clause is whether the defendant truly consented to, or deliberately elected, the mistrial. *Bauder II*, 974 S.W.2d at 731–32.

■ *Bauder II* directs that in a case where a mistrial has resulted from prosecutorial action, weighing the following two options will illustrate whether the defendant voluntarily consented to the mistrial and should be subject to retrial:

[O]n the one hand, whether the appellant's motion for mistrial was a choice he made in response to ordinary reversible error in order to avoid conviction, appeal, reversal, and retrial. Or, on the other hand, was he required to move for mistrial because the prosecutor deliberately or recklessly crossed "the line between legitimate adversarial gamesman-

ship and manifestly improper methods" that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it?

*Id.* at 732 (quoting *Bauder I,* 921 S.W.2d at 700) (citation omitted).

### The Prosecutor's Culpability

The State argues that appellant failed to establish that the offensive comment was made either intentionally or recklessly, pointing out that a habeas petitioner carries the burden of proof. *See, e.g., Ex parte Dixon,* 964 S.W.2d 719, 722 (Tex. App.—Fort Worth 1998, pet. ref'd) (citing *Ex parte Kimes,* 872 S.W.2d 700, 703 (Tex. Crim.App.1993)). To support its argument that there is no evidence that the prosecutor either intentionally or recklessly caused the mistrial, the State first contends that appellant did nothing to refute the explanations the prosecutor offered at the hearing on the motion for mistrial. At that hearing, the prosecutor argued that his question to Weckerling was proper for two reasons:

[I]n reference to the defense expert, he testified that he had seen the material from an insurance investigation and that question was asked and answered without any objection. Our expert, Mr. Lovett (phonetic) testified that he had reviewed the stuff from an insurance investigation. That question was also asked and answered without any objection by defense counsel. The issue is already before the jury as to an insurance investigation.

Also, the last question by defense counsel prior to passing a witness for recross [was] in reference to causation and fault of the victim. I certainly think that it is fair impeachment of any expert who comes in here and gives an opinion as to, one, things they have reviewed, and, two, things they have reviewed that

are contrary that currently represent to the jury—

Essentially, the State argues that we must accept these arguments as explanations of the prosecutor's behavior and conclude that because the prosecutor believed that the question was proper, he could not have intentionally or recklessly caused the mistrial.

 Otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered "opens the door," providing the party offering the evidence does not "stray beyond the scope of the invitation." *Schutz v. State,* 957 S.W.2d 52, 71 (Tex.Crim.App.1997); *Bush v. State,* 773 S.W.2d 297, 301 (Tex.Crim. App.1989). Doors to otherwise inadmissible evidence may not be opened through prompting or maneuvering by the State, though. *See Shipman v. State,* 604 S.W.2d 182, 185 (Tex.Crim.App. [Panel Op.] 1980). The transcript of Weckerling's testimony, however, does not support the prosecutor's contention that the door had been opened to allow his question about the results of the insurance carrier's investigation.

During Weckerling's testimony the insurance investigation was only mentioned once before the final question. When the prosecutor began his cross examination he asked: "Have you reviewed anything—any other investigations by an insurance company or other individuals?" Weckerling replied: "I think there is something in here, but I have not reviewed that." Given Weckerling's testimony that he never reviewed insurance investigation documents, appellant's questioning regarding the cause of the accident, in light of all the information he had, could not have invited questioning regarding the results of the insurance investigation.

Further, we do not agree that the transcript from the mistrial hearing establishes the prosecutor's state of mind at the time

he asked the question. The mistrial hearing took place three days after the trial court stopped the trial. When arguing that a mistrial was not required, the prosecutor merely provided possible legal bases upon which the trial court could find the insurance-investigation question proper. The prosecutor did not present what he thought or believed at the moment he asked the question. We decline to interpret the prosecutor's legal argument as personal testimony.

■ The State also faults appellant for not presenting more evidence at the habeas hearing of the prosecutor's state of mind. Though possessed of the power of subpoena, appellant did not call the prosecutor to testify as to his intent. While we acknowledge that a petitioner in a habeas hearing carries the burden of proof and that the best way to establish mental state would be to question the prosecutor, we disagree with the State's assertion that there is insufficient evidence to determine whether the prosecutor acted intentionally or recklessly in causing the mistrial.

■ Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App.1991), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992); *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App. [Panel Op.] 1978); *Obigbo v. State*, 6 S.W.3d 299, 306 (Tex.App.—Dallas 1999, no pet.); *Parrish v. State*, 950 S.W.2d 720, 722 (Tex. App.—Fort Worth 1997, no pet.). Thus, proof of knowledge is an inference drawn by the trier of fact from all the circumstances. *Dillon*, 574 S.W.2d at 94; *Ortiz v. State*, 930 S.W.2d 849, 856 (Tex.App.—Tyler 1996, no pet.); *Trejo v. State*, 766 S.W.2d 381, 385–86 (Tex.App.—Austin 1989, no pet.).

■ When judging guilt in a criminal trial, a jury may infer intent from any facts that tend to prove its existence, including the acts, words, and conduct of the accused. *Manrique v. State*, 994 S.W.2d 640, 649 (Tex.Crim.App.1999); *Hernandez*, 819 S.W.2d at 810; *Cordova v. State*, 698 S.W.2d 107, 112 (Tex.Crim.App.1985), *cert. denied*, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). A jury may also infer knowledge from such evidence. *See, e.g., Manrique*, 994 S.W.2d at 649; *Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995), *cert. denied*, 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996); *Hernandez*, 819 S.W.2d at 810; *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App. [Panel Op.] 1982).

■ Given this substantial precedent allowing state-of-mind determinations to stand on inferences, we examine the record to determine the prosecutor's state of mind from the circumstances surrounding the question. The prosecutor's last question to the last witness scheduled to testify asked whether the witness was aware that appellant's insurance carrier had found her at fault. We must determine whether the prosecutor knew or should have known that this question would likely result in a mistrial. *See Bauder II*, 974 S.W.2d at 732. To make this determination, we look at the evidentiary standards that necessitated the mistrial.

■ The rules of evidence clearly do not allow evidence of insurance coverage to be introduced in most circumstances: "[e]vidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully." Tex.R. Evid. 411. The State argues, however, that because there is no criminal case law that construes Rule 411, and because civil case law construes Rule 411 as not always requiring a mistrial, we cannot say

that the prosecutor knew or should have known that the operation of the rule would result in a mistrial in this case. *See Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex. 1962); *Beall v. Ditmore,* 867 S.W.2d 791, 795 (Tex.App.—El Paso 1993, writ denied) (both holding that the mere mention of insurance does not necessarily result in a mistrial).

In this case, however, the prosecutor's question did not merely mention the existence of insurance. Rather, the question addresses insurance coverage in the context of a fault finding. Not only should the prosecutor have known that Rule 411 prohibits the mention of insurance coverage in this context, he should also have known that, given the timing and subject matter of the question,[2] the prejudicial effect of the evidence would far outweigh any probative value under a Rule 403 analysis. *See* Tex.R. Evid. 403 (providing that otherwise relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice).

Appellant, on trial for manslaughter and criminally negligent homicide, did not dispute that she drove the car that struck Mitchell, so the only question before the jury was whether she "acted negligently or otherwise wrongfully." Questioning Weckerling's knowledge of the results of an insurance investigation both disclosed the existence of insurance coverage and informed the jury that others had independently determined that appellant had acted negligently or recklessly. We hold that the prosecutor, necessarily being acquainted with our rules of evidence, should have known that his question crossed "the line between legitimate adversarial gamesmanship and manifestly improper methods"

and created a substantial risk that a mistrial would result. *See Bauder II,* 974 S.W.2d at 732. Having held that the prosecutor intentionally or recklessly caused the trial to end in a mistrial, we sustain appellant's sole point.

### Conclusion

Because the prohibition against double jeopardy bars a second prosecution of appellant under the manslaughter and criminally negligent homicide indictment, we reverse the judgment of the trial court and render judgment dismissing the case with prejudice. *See* Tex.R.App. P. 43.2(c).

---

2. The prosecutor asked this question as the last question of the last witness on the last day of the lengthy jury trial.