EX PARTE SWADA MARIE LEWIS

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-126-CR

EX PARTE 

SWANDA MARIE LEWIS

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

  INTRODUCTION

Swanda Marie Lewis appeals the denial of her application for a pretrial writ of habeas corpus.  In one point, Lewis complains that the trial court erred in denying relief upon her claim of double jeopardy.  Because we agree that a second trial is jeopardy-barred, we reverse and render.

II.  FACTUAL AND PROCEDURAL BACKGROUND

Swanda Lewis met and married Kenneth Wiley in 1999.  Marital problems quickly developed, and Lewis found out that Wiley had had an affair with his ex-wife.  Wiley also began disappearing for days at a time, and during one such absence, the Health Department informed Lewis that Wiley had contracted A.I.D.S.  As a result of this discovery, Wiley and Lewis sought counseling through the Health Department, and Lewis agreed to continuing sexual relations with her husband, so long as he wore a condom.  At first Wiley abided by their arrangement; however, in the early morning hours of August 10, 2000, Wiley violently raped Lewis without a condom.

The morning after the assault, Wiley left the house.  When he came home that afternoon, he and Lewis argued.  During an ensuing fight, Lewis shot and killed Wiley in their home.  Lewis was charged with murder, and her trial began in November 2001.  The State offered the testimony of a jail house informant; a paramedic, who responded to the 911 call; investigating and arresting police officers; the medical examiner; and Wiley’s brother, none of whom witnessed Wiley’s death.  At trial, the medical examiner opined that Wiley died as a result of a contact gunshot wound to the back of his head.
(footnote: 1)
 After the State rested, Lewis took the stand in her own defense.  Lewis testified that Wiley raped her multiple times.  She stated when Wiley returned in the afternoon, they began to argue.  Lewis said that she was scared, so she ran to her bedroom, located her husband’s pistol, and placed the gun in her pants.  Lewis testified that as she was about to leave the house, Wiley grabbed her arms and started bouncing her up and down.  When Wiley released her, Lewis said she pulled the gun out from under her clothing, and as they struggled, the gun went off.  Lewis called 911 and was placed in the patrol car when officers arrived.  While Lewis admitted to shooting Wiley, she testified that she did not intend to pull the trigger.

On three occasions, the trial court sustained defense counsel’s objections to questioning from the State concerning Lewis’s pretrial silence.  First, during the State’s direct examination of Detective Cheryl Johnson, the prosecutor asked Detective Johnson, “When you met with Swanda Wiley, is that the name that she was giving you then?”  Defense counsel objected under article 38.08 of the code of criminal procedure; article 1, section 10 of the Texas Constitution; and the Fifth
 and Fourteenth
 Amendments to the United States Constitution, and the trial court sustained the objection.  Defense counsel did not, however, request a jury instruction or move for a mistrial.

Second, during the State’s cross-examination of Lewis, the following exchange occurred: 

Q. Did you ever tell the 911 operator [Kenneth Wiley] had been raping [you], he had been attacking [you]?

A. No.

Q. In fact, you never told any law enforcement about the rape?

[DEFENSE]:    Objection, Your Honor, as to the violation of 38.08, Article One, Section Ten of the Texas Constitution and the Fifth and Fourteenth Amendments of the United States Constitution.

This time, the trial court sustained the defendant’s objection, gave an instruction to disregard, and denied Lewis’s motion for mistrial.

The State continued its cross-examination of Lewis, concerning the period of time while she was in a police car after police responded to her 911 call:

Q. Were you under arrest at that point?

A. I never could get out [of the police car].

Q. Were you under arrest at that point?

A. I believe I was.

Q. Had they told you, ma’am, you are under arrest?

[DEFENSE]:  Objection as to what they told her, Your Honor.

THE COURT:  Sustained.

Q. (By [State]) Did you have handcuffs on?

A. No, I don’t think so.

. . . .

Q. Were you spoken to by officers?

[DEFENSE]:   Objection, Your Honor, 38.08, Article One, Section Ten of the Texas Constitution, Fifth and Fourteenth Amendments of the United States Constitution.
(footnote: 2)

. . . .

THE COURT:  Then, I don’t understand your objection.  Want to come up here?

[DEFENSE]:  Yes. . . .  Any question or statements by [the] police to her would imply silence.  It would imply she definitely testified that she is not free to leave.

THE COURT:  I understand.

[STATE]: I’m not getting into silence.  She made a statement to the police officer and it is contrary to what she testified to on direct.  So this is being offered for impeachment because ground work has already been laid.

THE COURT: Give me the statements.  Give me the question and the statement.

[STATE]: The question is, after Miranda, Officer Matt Moore asked her what happened and she told him, and it’s nothing like what she testified to under oath.

[DEFENSE]: Jackson v. Denno hearing would be necessary for that.

The court then asked the jury to retire to the jury room while the prosecutor conducted a voir dire examination of Lewis concerning her conversations with police at the scene of the crime and later at the police station.  Following further questioning of Lewis and an objection by defense counsel that the State’s questioning was an improper attempt at impeachment, the prosecutor stated:

I’m not offering -- this is being offered for impeachment, but we can’t even get the grounds for impeachment because this witness has got a memory lapse.  So this Jackson v. Denno, the response to that is it is not applicable.  This is being offered for impeachment purposes.  I’m not offering it as direct testimony to what she said.  Yes, it was very broad when I asked her, have you ever stated differently. . . .  In order to lay the proper area for impeachment, yes, it was done globally.  We can do it more specifically; however, this witness is not --

THE COURT:  Well, you can’t do it globally legally.

[STATE]:  I understand.

On the next morning of trial, the trial court, for a third time, sustained an objection by defense counsel based on the State commenting on Lewis’s silence when the prosecutor asked Lewis:

Q. After speaking with [Detective]John McCaskill on August 10
th
 of the year 2000, did you have occasion to learn the next day, on August 11
th
 of the year 2000, John McCaskill wanted to speak with you again?

A. Yes.

Q. And you denied him opportunity to speak --

[DEFENSE]: Objection, Your Honor. . . .  Article 1 Section 10 of the Texas Constitution, Fifth and Fourteenth Amendments of the United States Constitution, Article 38.08 of the Texas Code of Criminal Procedure, for all those reasons, Your Honor, object to that last question.

The trial court sustained the objection, instructed the jury to disregard, and granted Lewis’s motion for a mistrial.

Lewis then filed an application for a writ of habeas corpus, claiming that a subsequent trial regarding this offense was barred by double jeopardy provisions.  On April 4, 2002, the trial court held a hearing on Lewis’s application, with the same judge presiding over the habeas proceeding as had presided over the trial.  Lewis offered the trial transcript as evidence and rested.  The State offered a bill of exceptions, and the prosecutor took the stand to testify to the basis for the questions he had asked Lewis at trial.  The prosecutor testified that he had been “shoring [Lewis] up on prior inconsistent statements” and that he had not been “trying to recklessly, intentionally or knowingly goad the defense to having to move for a mistrial.”  At the conclusion of the hearing, the trial court denied Lewis’s request for habeas relief.  This appeal ensued.

III.  DISCUSSION

In her sole point, Lewis complains that a mistrial based on the prosecutor’s conduct bars a retrial under the Fifth Amendment of the United States Constitution and article one, section 14 of the Texas Constitution.  We agree.

A.  Habeas Corpus Standard of Review

We have jurisdiction to review the decision of the trial court in denying habeas corpus relief.  
See
 
Tex. R. App. P
. 31.1; 
Barnes v. State
, 70 S.W.3d 294, 301 (Tex. App.—Fort Worth 2002, pet. ref’d);
 Ex parte Dixon
, 964 S.W.2d 719, 722 (Tex. App.—Fort Worth 1998, pet. ref’d).  We review the record as it existed before the trial court at the habeas hearing to determine whether the court erred in failing to grant relief.  
Ex parte Dixon
, 964 S.W.2d at 722.  We generally review a trial court’s decision to grant or deny relief on a writ of habeas corpus under an abuse of discretion standard.  
Ex parte Wheeler
, 61 S.W.3d 766, 770 (Tex. App.—Fort Worth 2001, pet. filed)
.  The appellant bears the burden of proof at the habeas proceeding.  
Ex parte Kimes
, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993); 
Ex parte Storm
, 49 S.W.3d 401, 402 (Tex. App.—Fort Worth 2000, no pet.).

An abuse of discretion review of trial court decisions is not necessarily appropriate in the context of the application of law to facts when the decision does not turn on the credibility or demeanor of witnesses. 
 Ex parte Martin
, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999); 
Ex parte Mann
, 89 S.W.3d 296, 298 (Tex. App.—Fort Worth 2002, no pet.).  In such a situation, an appellate court must conduct a de novo review when “the trial judge is not in an appreciably better position than the reviewing court to make that determination.” 
 Guzman v. State
, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997); 
Ex parte Mann
, 89 S.W.3d at 298.

Throughout the habeas proceeding and on appeal, the prosecutor’s mental state has been at issue.  
See State v. Lee
, 15 S.W.3d 921, 924-25 (Tex. Crim. App. 2000); 
Barnett v. State
, 83 S.W.3d 810, 814 (Tex. App.—Texarkana 2002, no. pet.).  Testimony and other evidence was presented at the habeas hearing, and the same judge who heard Lewis’s application for habeas relief also presided over her trial.  We also note that the record of the writ hearing contains no express findings of fact or conclusions of law.  Because the trial court’s ruling could have turned on the credibility and demeanor of the prosecutor and because the trial court was in a better position than this court to determine questions of fact and to apply the law to those facts, we review this case under an abuse of discretion standard.
  See
 
Ex parte Dixon
, 964 S.W.2d at 722.

B.  Double Jeopardy

Both the United States and Texas Constitutions contain double-jeopardy clauses, which afford a criminal defendant protection against:  (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.  
Ex parte Wheeler
, 61 S.W.3d at 770-71 (citing 
United States v. Dixon
, 509 U.S. 688, 695-96, 113 S. Ct. 2849, 2855-56 (1993)).  Both constitutions are meant to restrain the government from subjecting persons accused of crimes to the mental, emotional, and financial hardship of repeated trials for the same offense.  
See Bauder v. State
, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996) (“
Bauder I
”).

As a general rule, when a mistrial is declared in a criminal prosecution at the request of the defendant, neither the federal nor the state double jeopardy provisions bar the government from retrying the defendant.  
Barnett,
 83 S.W.3d at 814;
 see also Ex parte Wheeler
, 61 S.W.3d at 771.  A successive prosecution may be barred, however, under the federal constitution when the earlier proceeding was terminated at the defendant’s request because the attorney representing the government deliberately provoked the defendant’s motion for mistrial.  
See Oregon v. Kennedy
, 456 U.S. 667, 676, 102 S. Ct. 2083, 2089 (1982).  Additionally, the Texas Court of Criminal Appeals interprets the double jeopardy provision of the Texas Constitution as providing broader protection than that provided under its federal counterpart and prohibits a subsequent trial when the prosecutor caused the mistrial either intentionally or recklessly.  
See Ex parte Bauder
, 974 S.W.2d 729, 730-31 (Tex. Crim. App. 1998) (“
Bauder II
”); 
see also Barnett
, 83 S.W.3d at 815 (“[N]egligent conduct on the part of the prosecutor will not trigger double jeopardy protection in this context.”).

In 
Bauder I,
 the court of criminal appeals announced that a subsequent prosecution is jeopardy-barred by the Texas Constitution after declaration of a mistrial when objectionable conduct of the prosecuting attorney was intended to induce a motion for mistrial or if “the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant’s request.”  
Bauder I
, 921 S.W.2d at 699.  Clarifying its holding in 
Bauder I
, the court said that the question in a case where mistrial has resulted from prosecutorial action is not the correctness of the ruling granting the mistrial, but rather whether the defendant truly consented to the mistrial.  
Bauder II
, 974 S.W.2d at 731-32.

A reviewing court must determine whether the defendant voluntarily consented to the mistrial and should be subject to retrial by weighing the two following options:

[O]n the one hand, whether the appellant’s motion for mistrial was a choice he made in response to ordinary reversible error in order to avoid conviction, appeal, reversal, and retrial.  Or, on the other hand, was he required to move for mistrial because the prosecutor deliberately or recklessly crossed “the line between legitimate adversarial gamesmanship and manifestly improper methods” that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it?

Id
. at 732 (quoting 
Bauder I
, 921 S.W.2d at 700) (citation omitted).  

C.  The Prosecutor’s Culpability: Questions regarding Lewis’s Silence

In this case, the State contends that retrial is not jeopardy-barred because, under the first option, Lewis freely chose a mistrial in response to ordinary reversible error, if any, and not in response to any intentional or reckless goading by the State.  Conversely, Lewis argues, that under the second option, she was forced to move for a mistrial because of the State’s reckless, if not intentional, conduct.

In assessing the prosecutor’s mental state, we must take into account the appropriate substantive law.  
See Lee
, 15 S.W.3d at 924 (holding that the prosecutor did not act intentionally or recklessly in commenting on defendant’s pre-arrest, pre-
Miranda
 silence because the law concerning the admission of such was unsettled in Texas and among federal courts).  Both the federal and the state constitutions prohibit the use of post-arrest silence against the accused at trial.  
See
 
U.S. Const
. amend. V; 
Tex. Const
. art. I, § 10; 
Doyle v. State
, 426 U.S. 610, 618, 96 S. Ct. 2240, 2245 (1976); 
Dinkins v. State
, 894 S.W.2d 330, 356 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 832 (1995).  In 
Fletcher v. Weir
, the Supreme Court reiterated its prohibition of the use of post-arrest, post-
Miranda
 silence against the accused for impeachment purposes.  455 U.S. 603, 607, 102 S. Ct. 1309, 1312 (1982); 
see also Veteto v. State
, 8 S.W.3d 805, 810 (Tex. App.—Waco 2000, pet. ref’d) (recognizing the prohibition of the use of post-arrest, 
post-Miranda
 silence). 
 The court of criminal appeals has also held that use of a defendant’s post-arrest, pre-
Miranda
 silence to impeach violates article I, section 10 of the Texas Constitution.  
Sanchez v. State
, 707 S.W.2d 575, 582 (Tex. Crim. App. 1986).

During Lewis’s trial, the court made the following findings of fact, among others:

The Court specifically finds that [Lewis] when she was placed in the car was not free to leave, that she was under arrest by her own testimony . . . [and that] when Officer Matt Moore first got there . . . that he did read her her warnings, 
Miranda
 warnings, which the Court finds are sufficient also under 38.22, that she was told she had the right to remain silent and the other warnings that are contained therein.

Accordingly, under well-defined law, the trial court properly sustained the three objections defense counsel made to the State’s questions of Detective Johnson and Lewis that utilized Lewis’s post-arrest silence.

We must now determine whether the State intended to induce a motion for mistrial or was aware of, but consciously disregarded, the risk that its improper conduct would prompt a motion for mistrial by Lewis.  
Barnett
, 83 S.W.3d at 814; 
State v. Cabrera
, 24 S.W.3d 528, 532 (Tex. App.—Corpus Christi 2000, pet. ref’d).  The State first argues that Lewis failed to carry her burden as the habeas applicant because she merely rested on the trial transcript during the habeas proceedings.  We disagree that Lewis failed to meet her burden.

As previously mentioned, the record from the trial proceedings demonstrates that the trial court informed the prosecutor that his global manner of setting up Lewis’s impeachment was improper.  The record also shows that three of defense counsel’s objections to the prosecutor’s questions utilizing Lewis’s post-arrest silence were sustained.  The trial record further shows that the trial court granted the mistrial because the State repeatedly attempted to use Lewis’s post-arrest silence to impeach her.

During the writ proceeding, the prosecutor testified as to the third question:  “[a]nd you denied him opportunity to speak”:

The subjective intent for doing that was simply for impeachment purposes.  Being well aware of the right, Fifth Amendment rights under the State and the Federal Constitution, it was nowhere near the purpose of complying [sic] silence as any evidence of guilt against the defendant.  It was shoring her up on prior inconsistent statements. . . .  In no way was I trying to recklessly, intentionally or knowingly goad the defense to having to move for a mistrial.

. . . .

Over and over again I’ve stated that it was used . . . to elicit an explanation for a prior inconsistent statement.  In no way, shape or form was the State trying to imply anything other than the fact that she gave a prior inconsistent statement.

The State argues that deference to the trial court demands that we affirm the trial court’s acceptance of the prosecutor’s explanation.  The State also contends that while the prosecutor may have strayed into objectionable territory, it was within the trial court’s discretion to deny Lewis’s application for a writ of habeas corpus because the state neither intentionally nor recklessly goaded Lewis into seeking a mistrial.

The record of this case, however, demonstrates that the State was aware of, but consciously disregarded, a risk that the objectionable events could require a mistral if requested by Lewis.  
See Cabrera
, 24 S.W.3d at 532 (holding that the trial court did not abuse its discretion in granting habeas relief where the prosecutor’s improper conduct in commenting on and eliciting inadmissible testimony three times was found to be reckless by the trial court).  In the face of the prosecutor’s acknowledged awareness of Lewis’s constitutional right to remain silent, he explained at the habeas hearing:  “[T]he question that was asked of the defendant while she was testifying, and you denied him opportunity to speak, and it was cut off with the objection.  The ending of that question was going to be, I know what tactics you used.”
(footnote: 3)  On cross-examination, however, the prosecutor agreed that nothing in the record indicated that Lewis had ever made a prior statement about the officer’s tactics.

When questioned if his “subjective intent” was “to bring out that she told him she wasn’t going to talk to him because of his tactics,” the prosecutor testified, “She denied him opportunity to speak by stating the words, quote, ‘I know what tactics you used.’  Unquote, yes.”  Defense counsel also asked, “The words that were stated, you didn’t need to bring up her silence, did you?” To which the prosecutor responded, “Didn’t say anything about silence.”  Again, defense counsel asked, “You said you wouldn’t talk to him?”  The prosecutor replied, “Denied him an opportunity to speak by stating the words, I know what tactics you use.  It is not an impeachment with silence, it is a prior inconsistent statement shoring up what was going on.”

Up until the trial court declared a mistrial, the State, in the face of three sustained objections, two curative instructions, and a prior motion for mistrial, repeatedly attempted to use Lewis’s silence in an improper manner.  
Cf. Veteto
, 8 S.W.3d at 812 (concluding it was reversible error for the trial court to deny defendant’s motion for mistrial because the prosecutor, on three separate occasions, improperly attempted to elicit testimony concerning the defendant’s post-arrest silence); 
Lewis v. State
, 933 S.W.2d 172, 182 (Tex. App.—Corpus Christi 1996, pet. ref’d) (holding that the trial court erred when it overruled the defendant’s objection to the State’s inquiry regarding the defendant’s post-arrest silence but that such was not reversible error because the prosecutor “did not continue down an impermissible line of questioning” and the trial court instructed the jury to disregard the statement).  

In short, the State walked a thin line and crossed it.  We hold that the prosecutor, admittedly familiar with the constitutional safeguards concerning the use of an accused’s post-arrest silence, knew or should have known that his question crossed “the line between legitimate adversarial gamesmanship and manifestly improper methods” and created a substantial risk that a mistrial would result.  
See Bauder II
, 974 S.W.2d at 732.  The prosecutor intentionally or recklessly caused the trial to end in a mistrial; accordingly, it was an abuse of discretion for the trial court to deny Lewis’s application for a writ of habeas corpus.  We sustain Lewis’s sole point.

IV.  CONCLUSION

The State's repeated use of Lewis’s post-arrest silence constituted impermissible prosecutorial conduct, and it is this court’s duty to enforce the mandates of our constitutions and of our statutes. 
 Because the prohibition against double jeopardy bars a second prosecution of Lewis for the murder of Kenneth Wiley, we reverse the judgment of the trial court and render judgment dismissing the case with prejudice.  
See
 
Tex. R. App. P.
 43.2(c); 
Ex parte Wheeler
, 61 S.W.3d at 774.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

[DELIVERED JANUARY 16, 2003]

FOOTNOTES
1:
During the medical examiner’s cross-examination, he testified that the  trajectory of the ball from the bullet was “slightly upward and slightly from left to right,” and he agreed that the bullet did not go through the entire skull.

2: No ruling specific to this objection appears in the record.

3:
The State’s bill of exceptions also states, “The State will further show, if able to make a part of the court reporter’s record, that:  . . . upon being given the opportunity on 8-11-00, the defendant denied the request to speak with Detective John McCaskill by stating, ‘I know what tactics you use.’”