COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-126-CR
EX PARTE
SWANDA MARIE LEWIS

------------
FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
------------
OPINION
------------

 INTRODUCTION

Swanda Marie Lewis appeals the denial of
her application for a pretrial writ of habeas corpus. In one point, Lewis
complains that the trial court erred in denying relief upon her claim of double
jeopardy. Because we agree that a second trial is jeopardy-barred, we reverse
and render.
II. FACTUAL AND PROCEDURAL BACKGROUND
Swanda Lewis met and married Kenneth Wiley
in 1999. Marital problems quickly developed, and Lewis found out that Wiley had
had an affair with his ex-wife. Wiley also began disappearing for days at a
time, and during one such absence, the Health Department informed Lewis that
Wiley had contracted A.I.D.S. As a result of this discovery, Wiley and Lewis
sought counseling through the Health Department, and Lewis agreed to continuing
sexual relations with her husband, so long as he wore a condom. At first Wiley
abided by their arrangement; however, in the early morning hours of August 10,
2000, Wiley violently raped Lewis without a condom.
The morning after the assault, Wiley left
the house. When he came home that afternoon, he and Lewis argued. During an
ensuing fight, Lewis shot and killed Wiley in their home. Lewis was charged with
murder, and her trial began in November 2001. The State offered the testimony of
a jail house informant; a paramedic, who responded to the 911 call;
investigating and arresting police officers; the medical examiner; and Wiley's
brother, none of whom witnessed Wiley's death. At trial, the medical examiner
opined that Wiley died as a result of a contact gunshot wound to the back of his
head. (1)
After the State rested, Lewis took the
stand in her own defense. Lewis testified that Wiley raped her multiple times.
She stated when Wiley returned in the afternoon, they began to argue. Lewis said
that she was scared, so she ran to her bedroom, located her husband's pistol,
and placed the gun in her pants. Lewis testified that as she was about to leave
the house, Wiley grabbed her arms and started bouncing her up and down. When
Wiley released her, Lewis said she pulled the gun out from under her clothing,
and as they struggled, the gun went off. Lewis called 911 and was placed in the
patrol car when officers arrived. While Lewis admitted to shooting Wiley, she
testified that she did not intend to pull the trigger.
On three occasions, the trial court
sustained defense counsel's objections to questioning from the State concerning
Lewis's pretrial silence. First, during the State's direct examination of
Detective Cheryl Johnson, the prosecutor asked Detective Johnson, "When you
met with Swanda Wiley, is that the name that she was giving you then?"
Defense counsel objected under article 38.08 of the code of criminal procedure;
article 1, section 10 of the Texas Constitution; and the Fifth and Fourteenth
Amendments to the United States Constitution, and the trial court sustained the
objection. Defense counsel did not, however, request a jury instruction or move
for a mistrial.
Second, during the State's
cross-examination of Lewis, the following exchange occurred:

     Q. Did you ever tell
 the 911 operator [Kenneth Wiley] had been raping [you], he had been attacking
 [you]?
     A. No.
     Q. In fact, you never
 told any law enforcement about the rape?
     [DEFENSE]: Objection,
 Your Honor, as to the violation of 38.08, Article One, Section Ten of the
 Texas Constitution and the Fifth and Fourteenth Amendments of the United
 States Constitution.

This time, the trial court sustained the
defendant's objection, gave an instruction to disregard, and denied Lewis's
motion for mistrial.
The State continued its cross-examination
of Lewis, concerning the period of time while she was in a police car after
police responded to her 911 call:

     Q. Were you under
 arrest at that point?
     A. I never could get
 out [of the police car].
     Q. Were you under
 arrest at that point?
     A. I believe I was.
     Q. Had they told you,
 ma'am, you are under arrest?
     [DEFENSE]: Objection
 as to what they told her, Your Honor.
     THE COURT: Sustained.
     Q. (By [State]) Did
 you have handcuffs on?
     A. No, I don't think
 so.
     . . . .
     Q. Were you spoken to
 by officers?
     [DEFENSE]: Objection,
 Your Honor, 38.08, Article One, Section Ten of the Texas Constitution, Fifth
 and Fourteenth Amendments of the United States Constitution.
 (2)
     . . . .
     THE COURT: Then, I
 don't understand your objection. Want to come up here?
     [DEFENSE]: Yes. . . .
 Any question or statements by [the] police to her would imply silence. It
 would imply she definitely testified that she is not free to leave.
     THE COURT: I
 understand.
     [STATE]: I'm not
 getting into silence. She made a statement to the police officer and it is
 contrary to what she testified to on direct. So this is being offered for
 impeachment because ground work has already been laid.
     THE COURT: Give me
 the statements. Give me the question and the statement.
     [STATE]: The question
 is, after Miranda, Officer Matt Moore asked her what happened and she told
 him, and it's nothing like what she testified to under oath.
     [DEFENSE]: Jackson v.
 Denno hearing would be necessary for that.

The court then asked the jury to retire to
the jury room while the prosecutor conducted a voir dire examination of Lewis
concerning her conversations with police at the scene of the crime and later at
the police station. Following further questioning of Lewis and an objection by
defense counsel that the State's questioning was an improper attempt at
impeachment, the prosecutor stated:

     I'm not offering --
 this is being offered for impeachment, but we can't even get the grounds for
 impeachment because this witness has got a memory lapse. So this Jackson v.
 Denno, the response to that is it is not applicable. This is being offered for
 impeachment purposes. I'm not offering it as direct testimony to what she
 said. Yes, it was very broad when I asked her, have you ever stated
 differently. . . . In order to lay the proper area for impeachment, yes, it
 was done globally. We can do it more specifically; however, this witness is
 not --
     THE COURT: Well, you
 can't do it globally legally.
     [STATE]: I
 understand.

On the next morning of trial, the trial
court, for a third time, sustained an objection by defense counsel based on the
State commenting on Lewis's silence when the prosecutor asked Lewis:

     Q. After speaking
 with [Detective]John McCaskill on August 10th of the year 2000, did
 you have occasion to learn the next day, on August 11th of the year
 2000, John McCaskill wanted to speak with you again?
     A. Yes.

           
Q. And you denied him opportunity to speak --

     [DEFENSE]: Objection,
 Your Honor. . . . Article 1 Section 10 of the Texas Constitution, Fifth and
 Fourteenth Amendments of the United States Constitution, Article 38.08 of the
 Texas Code of Criminal Procedure, for all those reasons, Your Honor, object to
 that last question.

The trial court sustained the objection,
instructed the jury to disregard, and granted Lewis's motion for a mistrial.
Lewis then filed an application for a writ
of habeas corpus, claiming that a subsequent trial regarding this offense was
barred by double jeopardy provisions. On April 4, 2002, the trial court held a
hearing on Lewis's application, with the same judge presiding over the habeas
proceeding as had presided over the trial. Lewis offered the trial transcript as
evidence and rested. The State offered a bill of exceptions, and the prosecutor
took the stand to testify to the basis for the questions he had asked Lewis at
trial. The prosecutor testified that he had been "shoring [Lewis] up on
prior inconsistent statements" and that he had not been "trying to
recklessly, intentionally or knowingly goad the defense to having to move for a
mistrial." At the conclusion of the hearing, the trial court denied Lewis's
request for habeas relief. This appeal ensued.
III. DISCUSSION
In her sole point, Lewis complains that a
mistrial based on the prosecutor's conduct bars a retrial under the Fifth
Amendment of the United States Constitution and article one, section 14 of the
Texas Constitution. We agree.
A. Habeas Corpus
Standard of Review
We have jurisdiction to review the
decision of the trial court in denying habeas corpus relief. See Tex.
R. App. P. 31.1; Barnes v. State, 70 S.W.3d 294, 301 (Tex. App.--Fort
Worth 2002, pet. ref'd); Ex parte Dixon, 964 S.W.2d 719, 722 (Tex.
App.--Fort Worth 1998, pet. ref'd). We review the record as it existed before
the trial court at the habeas hearing to determine whether the court erred in
failing to grant relief. Ex parte Dixon, 964 S.W.2d at 722. We
generally review a trial court's decision to grant or deny relief on a writ of
habeas corpus under an abuse of discretion standard. Ex parte Wheeler,
61 S.W.3d 766, 770 (Tex. App.--Fort Worth 2001, pet. filed). The appellant bears
the burden of proof at the habeas proceeding. Ex parte Kimes, 872
S.W.2d 700, 703 (Tex. Crim. App. 1993); Ex parte Storm, 49 S.W.3d 401,
402 (Tex. App.--Fort Worth 2000, no pet.).
An abuse of discretion review of trial
court decisions is not necessarily appropriate in the context of the application
of law to facts when the decision does not turn on the credibility or demeanor
of witnesses. Ex parte Martin, 6 S.W.3d 524, 526 (Tex. Crim. App.
1999); Ex parte Mann, 89 S.W.3d 296, 298 (Tex. App.--Fort Worth 2002,
no pet.). In such a situation, an appellate court must conduct a de novo review
when "the trial judge is not in an appreciably better position than the
reviewing court to make that determination." Guzman v. State, 955
S.W.2d 85, 87 (Tex. Crim. App. 1997); Ex parte Mann, 89 S.W.3d at 298.
Throughout the habeas proceeding and on
appeal, the prosecutor's mental state has been at issue. See State v. Lee,
15 S.W.3d 921, 924-25 (Tex. Crim. App. 2000); Barnett v. State, 83
S.W.3d 810, 814 (Tex. App.--Texarkana 2002, no. pet.). Testimony and other
evidence was presented at the habeas hearing, and the same judge who heard
Lewis's application for habeas relief also presided over her trial. We also note
that the record of the writ hearing contains no express findings of fact or
conclusions of law. Because the trial court's ruling could have turned on the
credibility and demeanor of the prosecutor and because the trial court was in a
better position than this court to determine questions of fact and to apply the
law to those facts, we review this case under an abuse of discretion standard.
See Ex parte Dixon, 964 S.W.2d at 722.
B. Double Jeopardy
Both the United States and Texas
Constitutions contain double-jeopardy clauses, which afford a criminal defendant
protection against: (1) a second prosecution for the same offense after
acquittal; (2) a second prosecution for the same offense after conviction; and
(3) multiple punishments for the same offense. Ex parte Wheeler, 61
S.W.3d at 770-71 (citing United States v. Dixon, 509 U.S. 688, 695-96,
113 S. Ct. 2849, 2855-56 (1993)). Both constitutions are meant to restrain the
government from subjecting persons accused of crimes to the mental, emotional,
and financial hardship of repeated trials for the same offense. See Bauder
v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996) ("Bauder I").
As a general rule, when a mistrial is
declared in a criminal prosecution at the request of the defendant, neither the
federal nor the state double jeopardy provisions bar the government from
retrying the defendant. Barnett, 83 S.W.3d at 814; see also Ex
parte Wheeler, 61 S.W.3d at 771. A successive prosecution may be barred,
however, under the federal constitution when the earlier proceeding was
terminated at the defendant's request because the attorney representing the
government deliberately provoked the defendant's motion for mistrial. See
Oregon v. Kennedy, 456 U.S. 667, 676, 102 S. Ct. 2083, 2089 (1982).
Additionally, the Texas Court of Criminal Appeals interprets the double jeopardy
provision of the Texas Constitution as providing broader protection than that
provided under its federal counterpart and prohibits a subsequent trial when the
prosecutor caused the mistrial either intentionally or recklessly. See Ex
parte Bauder, 974 S.W.2d 729, 730-31 (Tex. Crim. App. 1998) ("Bauder
II"); see also Barnett, 83 S.W.3d at 815 ("[N]egligent
conduct on the part of the prosecutor will not trigger double jeopardy
protection in this context.").
In Bauder I, the court of
criminal appeals announced that a subsequent prosecution is jeopardy-barred by
the Texas Constitution after declaration of a mistrial when objectionable
conduct of the prosecuting attorney was intended to induce a motion for mistrial
or if "the prosecutor was aware but consciously disregarded the risk that
an objectionable event for which he was responsible would require a mistrial at
the defendant's request." Bauder I, 921 S.W.2d at 699. Clarifying
its holding in Bauder I, the court said that the question in a case
where mistrial has resulted from prosecutorial action is not the correctness of
the ruling granting the mistrial, but rather whether the defendant truly
consented to the mistrial. Bauder II, 974 S.W.2d at 731-32.
A reviewing court must determine whether
the defendant voluntarily consented to the mistrial and should be subject to
retrial by weighing the two following options:

 [O]n the one hand, whether the
 appellant's motion for mistrial was a choice he made in response to ordinary
 reversible error in order to avoid conviction, appeal, reversal, and retrial.
 Or, on the other hand, was he required to move for mistrial because the
 prosecutor deliberately or recklessly crossed "the line between
 legitimate adversarial gamesmanship and manifestly improper methods" that
 rendered trial before the jury unfair to such a degree that no judicial
 admonishment could have cured it?

Id. at 732 (quoting Bauder I,
921 S.W.2d at 700) (citation omitted).
C. The Prosecutor's
Culpability: Questions regarding Lewis's Silence
In this case, the State contends that
retrial is not jeopardy-barred because, under the first option, Lewis freely
chose a mistrial in response to ordinary reversible error, if any, and not in
response to any intentional or reckless goading by the State. Conversely, Lewis
argues, that under the second option, she was forced to move for a mistrial
because of the State's reckless, if not intentional, conduct.
In assessing the prosecutor's mental
state, we must take into account the appropriate substantive law. See Lee,
15 S.W.3d at 924 (holding that the prosecutor did not act intentionally or
recklessly in commenting on defendant's pre-arrest, pre-Miranda silence
because the law concerning the admission of such was unsettled in Texas and
among federal courts). Both the federal and the state constitutions prohibit the
use of post-arrest silence against the accused at trial. See U.S.
Const. amend. V; Tex. Const. art. I, § 10; Doyle v. State, 426 U.S.
610, 618, 96 S. Ct. 2240, 2245 (1976); Dinkins v. State, 894 S.W.2d
330, 356 (Tex. Crim. App.), cert. denied, 516 U.S. 832 (1995). In Fletcher
v. Weir, the Supreme Court reiterated its prohibition of the use of
post-arrest, post-Miranda silence against the accused for impeachment
purposes. 455 U.S. 603, 607, 102 S. Ct. 1309, 1312 (1982); see also Veteto
v. State, 8 S.W.3d 805, 810 (Tex. App.--Waco 2000, pet. ref'd) (recognizing
the prohibition of the use of post-arrest, post-Miranda silence). The
court of criminal appeals has also held that use of a defendant's post-arrest,
pre-Miranda silence to impeach violates article I, section 10 of the
Texas Constitution. Sanchez v. State, 707 S.W.2d 575, 582 (Tex. Crim.
App. 1986).
During Lewis's trial, the court made the
following findings of fact, among others:
The Court specifically finds that [Lewis]
when she was placed in the car was not free to leave, that she was under arrest
by her own testimony . . . [and that] when Officer Matt Moore first got there .
. . that he did read her her warnings, Miranda warnings, which the
Court finds are sufficient also under 38.22, that she was told she had the right
to remain silent and the other warnings that are contained therein.
Accordingly, under well-defined law, the
trial court properly sustained the three objections defense counsel made to the
State's questions of Detective Johnson and Lewis that utilized Lewis's
post-arrest silence.
We must now determine whether the State
intended to induce a motion for mistrial or was aware of, but consciously
disregarded, the risk that its improper conduct would prompt a motion for
mistrial by Lewis. Barnett, 83 S.W.3d at 814; State v. Cabrera,
24 S.W.3d 528, 532 (Tex. App.--Corpus Christi 2000, pet. ref'd). The State first
argues that Lewis failed to carry her burden as the habeas applicant because she
merely rested on the trial transcript during the habeas proceedings. We disagree
that Lewis failed to meet her burden.
As previously mentioned, the record from
the trial proceedings demonstrates that the trial court informed the prosecutor
that his global manner of setting up Lewis's impeachment was improper. The
record also shows that three of defense counsel's objections to the prosecutor's
questions utilizing Lewis's post-arrest silence were sustained. The trial record
further shows that the trial court granted the mistrial because the State
repeatedly attempted to use Lewis's post-arrest silence to impeach her.
During the writ proceeding, the prosecutor
testified as to the third question: "[a]nd you denied him opportunity to
speak":

 The subjective intent for doing that was
 simply for impeachment purposes. Being well aware of the right, Fifth
 Amendment rights under the State and the Federal Constitution, it was nowhere
 near the purpose of complying [sic] silence as any evidence of guilt against
 the defendant. It was shoring her up on prior inconsistent statements. . . .
 In no way was I trying to recklessly, intentionally or knowingly goad the
 defense to having to move for a mistrial.
     . . . .
     Over and over again
 I've stated that it was used . . . to elicit an explanation for a prior
 inconsistent statement. In no way, shape or form was the State trying to imply
 anything other than the fact that she gave a prior inconsistent statement.

The State argues that deference to the
trial court demands that we affirm the trial court's acceptance of the
prosecutor's explanation. The State also contends that while the prosecutor may
have strayed into objectionable territory, it was within the trial court's
discretion to deny Lewis's application for a writ of habeas corpus because the
state neither intentionally nor recklessly goaded Lewis into seeking a mistrial.
The record of this case, however,
demonstrates that the State was aware of, but consciously disregarded, a risk
that the objectionable events could require a mistral if requested by Lewis. See
Cabrera, 24 S.W.3d at 532 (holding that the trial court did not abuse its
discretion in granting habeas relief where the prosecutor's improper conduct in
commenting on and eliciting inadmissible testimony three times was found to be
reckless by the trial court). In the face of the prosecutor's acknowledged
awareness of Lewis's constitutional right to remain silent, he explained at the
habeas hearing: "[T]he question that was asked of the defendant while she
was testifying, and you denied him opportunity to speak, and it was cut off with
the objection. The ending of that question was going to be, I know what tactics
you used." (3) On cross-examination,
however, the prosecutor agreed that nothing in the record indicated that Lewis
had ever made a prior statement about the officer's tactics.
When questioned if his "subjective
intent" was "to bring out that she told him she wasn't going to talk
to him because of his tactics," the prosecutor testified, "She denied
him opportunity to speak by stating the words, quote, 'I know what tactics you
used.' Unquote, yes." Defense counsel also asked, "The words that were
stated, you didn't need to bring up her silence, did you?" To which the
prosecutor responded, "Didn't say anything about silence." Again,
defense counsel asked, "You said you wouldn't talk to him?" The
prosecutor replied, "Denied him an opportunity to speak by stating the
words, I know what tactics you use. It is not an impeachment with silence, it is
a prior inconsistent statement shoring up what was going on."
Up until the trial court declared a
mistrial, the State, in the face of three sustained objections, two curative
instructions, and a prior motion for mistrial, repeatedly attempted to use
Lewis's silence in an improper manner. Cf. Veteto, 8 S.W.3d at 812
(concluding it was reversible error for the trial court to deny defendant's
motion for mistrial because the prosecutor, on three separate occasions,
improperly attempted to elicit testimony concerning the defendant's post-arrest
silence); Lewis v. State, 933 S.W.2d 172, 182 (Tex. App.--Corpus
Christi 1996, pet. ref'd) (holding that the trial court erred when it overruled
the defendant's objection to the State's inquiry regarding the defendant's
post-arrest silence but that such was not reversible error because the
prosecutor "did not continue down an impermissible line of
questioning" and the trial court instructed the jury to disregard the
statement).
In short, the State walked a
thin line and crossed it. We hold that the prosecutor, admittedly familiar with
the constitutional safeguards concerning the use of an accused's post-arrest
silence, knew or should have known that his question crossed "the line
between legitimate adversarial gamesmanship and manifestly improper
methods" and created a substantial risk that a mistrial would result. See
Bauder II, 974 S.W.2d at 732. The prosecutor intentionally or recklessly
caused the trial to end in a mistrial; accordingly, it was an abuse of
discretion for the trial court to deny Lewis's application for a writ of habeas
corpus. We sustain Lewis's sole point.
IV. CONCLUSION
The State's repeated use of Lewis's
post-arrest silence constituted impermissible prosecutorial conduct, and it is
this court's duty to enforce the mandates of our constitutions and of our
statutes. Because the prohibition against double jeopardy bars a second
prosecution of Lewis for the murder of Kenneth Wiley, we reverse the judgment of
the trial court and render judgment dismissing the case with prejudice. See
Tex. R. App. P. 43.2(c); Ex parte Wheeler, 61 S.W.3d at 774.

ANNE GARDNER
JUSTICE
PANEL B: DAUPHINOT, GARDNER, and WALKER,
JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
[DELIVERED JANUARY 16, 2003]

1. During the medical examiner's cross-examination, he
testified that the trajectory of the ball from the bullet was "slightly
upward and slightly from left to right," and he agreed that the bullet did
not go through the entire skull.
2. No ruling specific to this objection appears in the
record.
3. The State's bill of exceptions also states, "The
State will further show, if able to make a part of the court reporter's record,
that: . . . upon being given the opportunity on 8-11-00, the defendant denied
the request to speak with Detective John McCaskill by stating, 'I know what
tactics you use.'"